731 F.2d 1486
 Gary Eldon ALVORD, a/k/a Paul Robert Brock, a/k/a Gary Eldon
Venczel, Petitioner-Appellee, Cross-Appellant,
v.
Louie L. WAINWRIGHT, Secretary, Department of Corrections,
Respondent- Appellant, Cross-Appellee.
 No. 83-3345.
 United States Court of Appeals,
Eleventh Circuit.
 April 25, 1984.
 
 Ann Garrison Paschall, Asst. Atty. Gen., Tampa, Fla., for respondent-appellant, cross-appellee.
 William J. Sheppard, Elizabeth L. White, Steven Malone, Courtney Johnson, Jacksonville, Fla., for petitioner-appellee, cross-appellant.
 Appeals from the United States District Court for the Middle District of Florida.
 ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC
 (Opinion February 10, 1984, 11 Cir., 1984, 725 F.2d 1282).
 Before HILL and FAY, Circuit Judges, and ALLGOOD*, District Judge.
 PER CURIAM:
 
 
 1
 Gary Eldon Alvord has moved that this court grant a rehearing in his case, Alvord v. Wainwright, 725 F.2d 1282 (11th Cir.1984). In section IV of our opinion, at 1298-99, we concluded that the contended failure of the police officer to advise Alvord of his right to have a lawyer appointed if he could not afford one would not render his statement inadmissible. Alvord argues that Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), does not support our conclusion.22a In appraising this contention, we have made a further complete review of Alvord's trial, and we substitute the following for the second full paragraph of section IV of our opinion.
 
 
 2
 We find both of Alvord's arguments that are directed to the adequacy and form of his Miranda warnings to be without merit. First, it is clear that the failure of the officer to obtain a written waiver in no way rendered the statement inadmissible. North Carolina v. Butler, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). Second, the record does not support Alvord's contention that the officer failed to advise him of his right to have counsel appointed if he could not afford one. The state trial court conducted a hearing, out of the presence of the jury, to determine the admissibility of the officer's testimony. There was no testimony that the officer did not give full Miranda warnings and advice. The officer stated at the hearing that he advised Alvord of his rights as follows:
 
 
 3
 Q. Okay. And did you, in fact, talk to him?
 
 
 4
 A. Yes, sir, I did.
 
 
 5
 Q. Okay. Did you advise him of his rights?
 
 
 6
 A. Yes, sir, I did.
 
 
 7
 Q. And what did you tell him regarding his rights?
 
 
 8
 A. First of all I advised him that, who I was. I advised him who I was and that I was a detective with the Police Department in Lansing. I advised him that he didn't have to talk to me, that anything he said would be used in court against him. I advised him that he had to, he had a right to an attorney. He had a right to have an attorney present before he answered any questions or made any statement.
 
 
 9
 Q. All right. Did he request to have an attorney?A. No sir, he did not.
 
 
 10
 Q. Did he request to remain silent?
 
 
 11
 A. No, sir, he did not.
 
 
 12
 Q. Did you or anyone in your presence promise him anything in order for him to make a statement?
 
 
 13
 A. No, sir.
 
 
 14
 Q. Did you or anyone in your presence threaten him to make a statement?
 
 
 15
 A. No, sir.
 
 
 16
 Q. Did you promise him immunity if he made a statement?
 
 
 17
 A. No, sir.
 
 
 18
 Q. Did you coerce him in any way to make a statement?
 
 
 19
 A. No, sir.
 
 
 20
 Q. Did he indicate whether or not he understood his rights?
 
 
 21
 A. Yes, sir. he told me he was aware of his rights.
 
 
 22
 Q. All right. And then what did you say to the defendant, Gary Alvord?
 
 
 23
 A. At this time I advised him that I wanted to talk to him about a safe job.
 
 
 24
 Q. Okay. What did he say?
 
 
 25
 A. Just looked at me and said, "I am a rapist, not a God-damn thief."
 
 
 26
 Q. And what did you say at that point?
 
 
 27
 A. I said, "What do you mean by that"?
 
 
 28
 Q. What did he say?
 
 
 29
 A. He then said, "I am wanted in Florida for three murders."
 
 
 30
 Q. And what did you say?
 
 
 31
 A. I said, "I thought it was two."
 
 
 32
 Q. What did he say?
 
 
 33
 A. He said, "Maybe they forgot one."
 
 
 34
 Q. And what did you say to that?
 
 
 35
 A. I looked at him and said, "Did you do it?"
 
 
 36
 Q. And what did he respond?
 
 
 37
 A. He said, "They will have to prove it."
 
 
 38
 Q. Okay. Anything further regarding the conversation?
 
 
 39
 At this point, the officer testified that Alvord indicated that he had nothing more to say. There was no other testimony taken on the sufficiency of the Miranda warnings.
 
 
 40
 The trial judge refused to admit any testimony as to Alvord's prior misconduct (which consisted of the officer's statement that Alvord was suspected of committing a burglary) except Alvord's comment that he was a rapist. In the presence of the jury (with the exception of the burglary testimony) the officer's testimony was in all material respects the same as his testimony at the exclusion hearing.
 
 
 41
 In this habeas corpus proceeding, Alvord must prove his right to relief by a preponderance of the evidence. It is not the state's responsibility to prove that Alvord received the proper warnings; it is Alvord's responsibility to prove that he did not. Corn v. Zant, 708 F.2d 549, 563 (11th Cir.1983); Hill v. Linahan, 697 F.2d 1032, 1036 (11th Cir.1983); Henson v. Estelle, 641 F.2d 250, 253 (5th Cir.), cert. denied, 454 U.S. 1056, 102 S.Ct. 603, 70 L.Ed.2d 593 (1981). Alvord relies solely on the above excerpt as proof of his contention that the officer did not advise him of his right to have counsel appointed for him. At the evidentiary hearing in the district court, 564 F.Supp. 459, Alvord made no effort to elaborate on the officer's testimony as it appears in the state transcript.22b From the transcript, we conclude that Alvord failed to meet his burden of proof.
 
 
 42
 The transcript demonstrates that the officer affirmatively testified that he advised Alvord of his Miranda rights. See supra italicized portion of transcript excerpt. Despite this affirmative testimony, Alvord seeks to establish that the officer did not properly repeat the warnings by relying on the officer's testimony that he informed Alvord of his "right to have an attorney present before he answered any questions or made any statement." Alvord relies, apparently, on the officer's failure specifically to mention that Alvord was entitled to appointed counsel; this does not prove that the officer did not properly inform Alvord of his rights.
 
 
 43
 The officer testified without qualification that he gave Alvord the proper warnings. The failure of the officer to use the word "appointed" when reviewing the contents of those warnings does not establish that his previous testimony was incorrect or incomplete. First, the officer did not attempt to explicitly state the warnings, and he was not requested to do so. Alvord's attorney cross-examined the officer, but never attempted to establish the deficiency Alvord now asserts. He attempted to establish other deficiencies in the warning. Second, the officer's informal reference to Alvord's "right" to counsel certainly is a clear enough shorthand method for referring to the right to counsel regardless of ability to pay. The officer testified to an unqualified "right" to counsel; this is not a case, as was Lathers v. United States, 396 F.2d 524, 533 (5th Cir.1968), in which the officer testified, "we don't furnish attorneys ... they have the prerogative to call one." Indeed, the Supreme Court, itself, has summarized the essence of the Miranda warnings in a fashion remarkably similar to that used by this officer:
 
 
 44
 "In Miranda v. Arizona, the court determined that the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination required that custodial interrogation be preceded by advice to the putative defendant that he has the right to remain silent and also the right to the presence of an attorney. 384 U.S. , at 479 [86 S.Ct. 1602, 1630, 16 L.Ed.2d 694]. The Court also indicated the procedures to be followed subsequent to the warnings. If the accused indicates that he wishes to remain silent, "the interrogation must cease." If he requests counsel, the interrogation must cease until an attorney is present." Id., at 474 [86 S.Ct. at 1627].
 
 
 45
 Edwards v. Arizona, 451 U.S. 477, 481-82, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981) (emphasis added). The officer's summary of Miranda warnings, which was as complete as the Court's, was adequate. Absent any caveat to his testimony that Alvord had been given his rights, there is no proof that he was not. Alvord has thus failed to meet his burden of proving that he did not receive the proper warnings. With these additional observations, the petition for rehearing is
 
 
 46
 DENIED.
 
 
 47
 No member of this panel or judge in regular service on the court having requested that the court be polled on rehearing en banc (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 26), the suggestion for rehearing en banc is
 
 
 48
 DENIED.
 
 
 
 *
 Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation
 22a In his petition for rehearing, Alvord points out that the Court in Michigan v. Tucker relied in part on the timing of Tucker's arrest. Tucker was arrested before the Court issued its decision in Miranda; however, because he was tried after Miranda, the decision applied at his trial. Michigan v. Tucker, 417 U.S. at 435, 94 S.Ct. at 2359. The Court stated that the protections of Miranda are not constitutional, but "prophylactic," id. at 439, 94 S.Ct. at 2361, thus causing some commentators to question the constitutional basis of the Miranda rule and its continuing vitality in habeas corpus proceedings. See, e.g., Stone, The Miranda Doctrine in the Burger Court, 1977 Sup.Ct.Rev. 99, 115-25. Nevertheless, the Court also stated that "[w]e consider it significant that the officers' failure to advise respondent of his right to appointed counsel occurred prior to the decision in Miranda," 417 U.S. at 447, 94 S.Ct. at 2365, thus limiting its holding so that it does not directly govern this case. We perceive the effect of the Michigan v. Tucker case to be, at best, unclear; we therefore decide on rehearing to refuse to rely on that case. We need not address Michigan v. Tucker's applicability in this case given our present resolution of the issue.
 22b On cross-examination, the officer reiterated that Alvord had assured him that he understood his constitutional rights.