Calvin Carlos CAMPBELL,
Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, Secretary,
Department of Corrections,
Respondent-Appellee.

No. 83–3337.

United States Court of Appeals,
Eleventh Circuit.

Aug. 20, 1984.

Rehearing and Rehearing En Banc
Denied Oct. 11, 1984.

Dorothy M. Walker, Walker & Vetrick, Belle Glade, Fla., for petitioner-appellant.

Raymond L. Marky, Asst. Atty. Gen., Tallahassee, Fla., for respondent-appellee.

Before HILL and ANDERSON, Circuit Judges, and THORNBERRY,* Senior Circuit Judge.

JAMES C. HILL, Circuit Judge:

Calvin Carlos Campbell appeals to this court from the order of the district court denying his petition for a writ of habeas

* Honorable Homer Thornberry, U.S. Circuit Judge for the Fifth Circuit, sitting by designa-tion.

corpus. Campbell was convicted of murder in the first degree in 1966 in a Florida state court, and his conviction was affirmed by the Florida Supreme Court in *Campbell v. State*, 227 So.2d 873 (Fla.1969), *pet. for cert. dismissed*, 400 U.S. 801, 91 S.Ct. 7, 27 L.Ed.2d 33 (1970). In 1974, Campbell filed a motion to vacate, set aside, or correct sentence pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. The Florida Circuit Court denied this motion, and the Florida District Court of Appeals affirmed in *Campbell v. State*, 338 So.2d 843 (Fla.Ct.App.1976). In 1980, Campbell filed an original action for a writ of habeas corpus in the Florida Supreme Court; the Florida court denied Campbell's petition in *Campbell v. Turner*, 386 So.2d 634 (Fla. 1980). Campbell filed this case in the district court in 1979, later amending his petition to include the claim for relief presented in his state habeas petition.[1]

■ Campbell raised the following issues before the district court in some manner:

A. That his conviction is invalid under *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968);

B. That the state trial court committed constitutional error in refusing to allow him to introduce psychiatric testimony as to his intent to commit the crime;

C. That the trial court erred in instructing the jury concerning the felony murder rule, and that the felony murder rule is unconstitutional;

D. That the evidence at his trial was insufficient to support his conviction;

E. That his confessions were involuntary;

F. That testimony by a police officer admitted at his trial was constitutionally inadmissible;

G. That his examination by a court-appointed psychiatrist was constitutionally flawed;

H. That he was incompetent to stand trial;

I. That the jury instructions at his trial impermissibly shifted the burden of proof to him on certain elements of the offense;

J. That the McNaughten test, used in Florida as the test of insanity, is unconstitutional;

K. That his grand jury and petit jury were unconstitutionally composed;

L. That he was denied due process by the failure of state officials to serve subpoenas on witnesses at trial;

M. That the prosecutor withheld exonerating evidence at trial;

N. That he was denied a fundamentally fair trial by the presence of officers of the law in the courtroom;

O. That the prosecutor unconstitutionally impeached him by use of his criminal record;

P. That he was denied due process by the failure of the state to have a court reporter transcribe portions of his trial;

Q. That he was denied a fair trial by excessive pretrial publicity; and

R. That his Rule 3.850 hearing was flawed by ex parte contacts between the judge and attorneys for the state.

In addition, Campbell contends that he should have received an evidentiary hearing in the district court. None of the other claims presented on appeal by Campbell were raised before the district court; therefore, those claims are not properly before

---

**1.** This is not Campbell's first federal habeas action. Campbell was originally sentenced to death; however, presumably in light of *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), a federal district court set aside his death sentence in a case styled *Campbell v. Wainwright*, No. 72–1212–CIV–J–S (M.D. Fla.1972). In that case, Campbell apparently raised only one issue—a claim that his sentence was unconstitutional under *Witherspoon v. Illi-*

*nois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)—that is presented in this proceeding. Furthermore, it appears that the State of Florida has not pleaded that Campbell's current action constitutes an abuse of the writ. *See Sanders v. United States*, 373 U.S. 1, 10, 83 S.Ct. 1068, 1074, 10 L.Ed.2d 148 (1963) (burden on state to plead abuse of the writ). In view of the state's failure to plead abuse of the writ, it appears that the issues are properly before this court.

this court. *See, e.g., Cobb v. Wainwright,* 666 F.2d 966, 968 n. 1 (5th Cir. Unit B), *cert. denied,* 457 U.S. 1107, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982).

■ Of the issues presented, those designated C, D, E, F, G, J, N, and P are without merit, *see* Eleventh Circuit Rule 25, and we need not discuss them further. Issues H and Q are affirmatively contradicted by the record and are also without merit. As to issue L, the record shows that certain witnesses did not testify because Campbell's lawyer chose not to call them for strategic reasons—not because of any failure by state officers to serve subpoenas. This issue also is without merit. We also need not address issue A (the *Witherspoon* issue) because that claim for relief became moot when the district court invalidated Campbell's death sentence in 1972. Upon finding a *Witherspoon* violation, this court vacates the petitioner's death sentence, *see Witt v. Wainwright,* 714 F.2d 1069 (11th Cir.1983), *cert. granted,* — U.S. ——, 104 S.Ct. 2168, 80 L.Ed.2d 551 (1984); we do not set aside the conviction, *see id. See also Smith v. Balkcom,* 660 F.2d 573, 575–79 (5th Cir. Unit B. 1981), *modified,* 677 F.2d 20, *cert. denied,* 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982).

## I. EVIDENTIARY HEARING

Campbell contends that the district court erred in denying him an evidentiary hearing. Campbell contends that he should have been allowed to prove: (1) that he did not receive a full and fair hearing at his state Rule 3.850 proceeding, and (2) that cause and prejudice render the procedural bar set forth in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), inapplicable in this case. We hold that the district court properly declined to hold an evidentiary hearing on both issues.

■ Campbell contends that, if allowed an evidentiary hearing, he would be able to show that ex parte contacts between attorneys for Florida and the state judge who ruled on his Rule 3.850 motion rendered the proceeding unfair. Thus, according to Campbell, he did not receive a "full and

fair hearing," and the presumption of correctness afforded state findings of historical fact, *see* 28 U.S.C. § 2254(d), should not have been applied in this case. *See generally Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). In support of this contention, Campbell introduced an affidavit from the attorney who represented him at the Rule 3.850 hearing. Campbell's attorney stated that he observed the state's attorneys talking with the state judge about a proposed order that they had drafted denying the motion. The attorney's affidavit gives no indication that the judge was doing anything other than receiving the proffered order from the state's attorneys. This did not deprive Campbell of a fair hearing, and we see no reason for an evidentiary hearing on the issue. The record shows that Campbell offered as proof nothing except the affidavit. *See Alvord v. Wainwright,* 731 F.2d 1486, at 1488–89 (11th Cir.1984) (on petition for rehearing).

■ As to Campbell's contention that he should have received an evidentiary hearing to show cause and prejudice, our analysis is somewhat more complex. Except for claim I (alleged burden-shifting instructions), Campbell raised all of his claims before either the state Supreme Court on direct appeal or the state Rule 3.850 court, or both. The district judge held several of Campbell's claims first raised before the Rule 3.850 court to be barred under *Wainwright* because Campbell failed to raise them initially on direct appeal as Florida procedure requires. *See Sullivan v. Wainwright,* 695 F.2d 1306, 1310 (11th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 290, 78 L.Ed.2d 266 (1983). An examination of the state court's opinion leads us to conclude that the state court reached the merits of at least some of the issues presented, however; and, under the well-established rule that when the "state court decides the case on the merits, federal review ... is not barred," *Dobbert v. Strickland,* 718 F.2d 1518, 1524 (11th Cir.1983), we conclude these claims are not barred. *See also Thomas v. Blackburn,* 623 F.2d 383, 386 &

n. 1 (5th Cir.1980), *cert. denied,* 450 U.S. 953, 101 S.Ct. 1413, 67 L.Ed.2d 380 (1981). Given the wording of the order, we are unable to determine which, if any, of the issues the Rule 3.850 court decided on the merits; we therefore must reach all the issues presented on the merits, and Campbell's request for a hearing on cause and prejudice is moot.

■ The state court order reads in full as follows:

This cause coming on to be heard on the 3rd and 4th days of October, 1974, and there being present before the Court L. Arthur Lawrence, Jr., State attorney of the Third Judicial Circuit, assigned by Executive Order of the Governor dated August 2, 1974, on behalf of the State of Florida, and Movant, Calvin Carlos Campbell, together with his counsel, Stephen K. Johnson. There having been some apparent confusion as to specifically which Motion or Petition the parties were proceeding upon, it was stipulated by Movant and the State of Florida and approved by the Court that the Court would receive evidence and hear oral argument on the motion to Vacate Conviction and Sentence bearing date of March 13, 1974, and containing paragraphs Nos. 1 through 21; being a recapitulation of similar prior motions or petitions filed of record herein.

With respect to paragraph No. 8 of the Motion, the Court finds that Movant may have shown prima facie at least that negroes were unlawfully excluded from the master jury list from which the grand jury was selected contrary to Movant's constitutional rights; but the Court further finds that even though the Mov-

ant's constitutional rights may have been violated in this respect, this Court would be required to decline to apply such state of facts retroactively. (*Watson v. U.S.,* 484 F.2d 34).

The Court finds with respect to the issues in paragraph 9 of the Motion that Movant was competent and his admissions, confessions, and statements were voluntary and not illegally obtained.

The Court further finds that all other issues asserted *have been foreclosed by the appeal in this case, were judgment decisions of Petitioner's counsel, or are otherwise insufficient to justify the relief sought by movant.*

IT IS, THEREFORE, UPON CONSIDERATION THEREOF ORDERED AND ADJUDGED that the Motion to Vacate the Judgment and Sentence, bearing date of March 13, 1974, and any and all other similar motions or petitions filed heretofore by the Movant are hereby denied.

In affirming this order, the Florida appellate court provided no indication that it would not consider Campbell's allegations because he failed to raise them on appeal.[2] Although the state argues that, in the part of the order stating that some issues were "foreclosed by the appeal," the judge applied a bar as to those issues that could have been raised on appeal, we do not find this phrase to be so clear. The court may have meant that the issues were correctly decided adversely to Campbell on appeal, and need not be discussed further. In any event, because of the alternative phrasing of the court's order, we cannot determine which issues the court may have considered to be "foreclosed." Given this situation, a federal court must address the merits.[3]

---

**2.** As the Supreme Court stated in *County Court of Ulster County v. Allen,* 442 U.S. 140, 153, 99 S.Ct. 2213, 2222, 60 L.Ed.2d 777 (1979), "[t]he most logical inference to be drawn from the appellate division's unexplained affirmance is that the court accepted not only the judgment but also the reasoning of the trial court."

**3.** We note that the state's brief relating to the *Wainwright* issues evidences some confusion. At some points, the state apparently argues that Campbell failed to exhaust his state remedies;

however, a thorough review of the record reveals that all of Campbell's claims are exhausted. Indeed, the state's pleadings in the district court admit the claims have been exhausted. Failure to exhaust arises when a petitioner files a habeas proceeding raising claims never presented to a state court, *see generally Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); the procedural bar of *Wainwright* applies when the state refuses to consider an issue because of a procedural default. Thus, if the petitioner has never presented an issue to

■ As to issue I, our conclusion is somewhat different. This issue was first presented to the state courts in 1980 in a habeas petition submitted to the Florida Supreme Court; the Florida court denied the petition in a one sentence order without indicating whether it had reached the merits. (This situation differs from the Rule 3.850 proceeding in that no other court opinion provides any guidance as to whether the court reached the merits. *See supra* note 2.) [4] In deciding whether the state court reached the merits, we adopt the reasoning of the Court of Appeals for the Second Circuit in *Martinez v. Harris*, 675 F.2d 51, 54 (2d Cir.1982), *cert. denied*, 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982).

In *Martinez*, the court noted that several situations can arise in which it is difficult to decide whether the state court reached the merits when it rendered its decision without opinion. The state's attorney may have briefed only the procedural default issue; he may have briefed only the merits; or he may have briefed both issues. The *Martinez* court concluded that only in the second situation—when the state's attorney briefs only the merits—should the federal court also reach the merits. *Id.* at 54. To hold otherwise would place the state's attorney in the unreasonable position of choosing whether to argue the merits in the alternative when briefing the case in state court. *Id.* We agree with the *Martinez* court's resolution of this issue. The petitioner—who has failed properly to preserve the point of error—should sustain the burden of showing that the state has created in his case an exception to the established rule and reached the merits. The *Martinez* rule provides a reasonable resolution of this problem. In this case, the *Martinez* rule clearly leads to the conclusion that Campbell is barred now from

asserting issue I unless he can demonstrate cause and prejudice.

■ We must still resolve Campbell's claim to an evidentiary hearing on his allegation that he can show cause and prejudice for his failure earlier to raise issue I. Campbell argues that the novelty of the claim concerning allocation of the burden of proof at the time of his trial constitutes cause. The Supreme Court in *Engle v. Issac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), held that counsel could have anticipated the development of the law in this area by reading *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and rejected a similar claim in a similar case. Campbell notes that he was tried before the decision in *In re Winship*, however. In *Reed v. Ross*, — U.S. —, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), the Supreme Court held that when a defendant was tried before *Winship*, his attorney's inability to anticipate that case would constitute cause. A showing of cause does not entitle Campbell to present his claim on the merits, however. Campbell must also demonstrate prejudice under *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). *See also Sullivan v. Wainwright*, 695 F.2d at 1311 (holding that petitioner's failure to show prejudice precludes review of a jury instruction claim). In *Reed v. Ross*, the state conceded the issue of prejudice. — U.S. at —, 104 S.Ct. at 2906.

In this case, we conclude that Campbell has not demonstrated prejudice under *Sullivan* and *Frady*. Campbell "must show that the ailing instruction so infected the entire trial that the conviction ... violates due process." 695 F.2d at 1311. The Court in *Frady* explained this test (again in the context of a claimed error in jury instructions) as follows:

> According to Frady, the trial court's erroneous instructions relieved the Govern-

---

the state courts, *Wainwright does not control*. The action required of a federal court is vastly different in the two situations.

**4.** In a case in which the state appellate court affirms a decision of another state court without

opinion but the trial-level or intermediate appellate court reached the merits (as happened in this case with respect to Campbell's Rule 3.850 motion) the federal court should be guided by the written opinion and reach the merits.

ment of the burden of proving malice, an element of the crime of murder, beyond a reasonable doubt, so that, as Frady would have it, his conviction must be overturned.

So stated, Frady's claim of actual prejudice has validity only if an error in the instructions concerning an element of the crime charged amounts to prejudice *per se*, regardless of the particular circumstances of the individual case. Our precedents, however, hold otherwise. Contrary to Frady's suggestion, he must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.

456 U.S. at 170, 102 S.Ct. at 1595–96 (emphasis in original). The Court concluded that, given the evidence at trial, no prejudice could have occurred.

The portion of the instructions apparently [5] challenged in this case is as follows:

But before you acquit on the ground of self-defense you ought to believe that the defendant's cause of apprehension was reasonable. Whether the facts constituting such reasonable cause have been established by the evidence, you are to determine, and unless the facts constituting such reasonable cause have been established by the evidence in the cause, you cannot acquit in such case, on the ground of self-defense, even though you may believe that the Defendant really thought that he was in danger.

\* \* \* \* \* \*

In law, sanity is the normal condition and every person accused of crime is presumed by the law to be sane. If, however, there arises from the evidence introduced by the state or by the Defendant, or both, a reasonable doubt of the sanity of the accused, the presumption of sanity is overcome and the accused will be entitled to an acquittal, unless the State meets and overcomes this reasonable doubt arising in Defendant's favor by evidence sufficient to convince you, beyond all reasonable doubt, of the sanity of the accused at the time of the commission of the alleged crime. If insanity of a permanent type or continuing nature, or characterized by an habitual or confirmed disorder of the mind, not temporary or occasional, is shown to have existed prior to the commission of the homicide, if one was committed, it would be presumed to be continued up to and including the time the act was committed, unless that presumption is overcome by testimony sufficient to provide the contrary, beyond a reasonable doubt.

\* \* \* \* \* \*

[B]ut if partial insanity, that is, insanity not of a permanent type or continuing nature or characterized by an habitual or confirmed disorder of the mind, but merely temporary and occasional, were shown to have existed before the homicide if one was committed, then there would be no presumption of law that it existed at the time of the homicide, and in order to overcome the legal presumption of sanity in such case, it would be necessary for the evidence to show that insanity existed at the time of the homicide, or such facts bearing upon that question as would raise a reasonable doubt whether or not insanity existed at that time. (T.T. 761–762).

We cannot divine which portions of these instructions arguably shifted the burden of proof on insanity or self defense to Campbell. *See generally Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). In addition, except for Campbell's testimony that he acted in self defense, there was no evidence of either insanity or self defense adduced at trial. (All the psychiatrists who testified indicated Campbell to be sane.) The evidence in the case offered little support for Campbell's testimo-

---

**5.** Campbell's brief, a rambling and disconnected discourse, from which we have sought to distill the issues discussed, does not cite to any specific portion of the transcript in support of the improper jury instruction contention.

ny.[6] The district court properly refused an evidentiary hearing on this issue—nothing Campbell offered to prove was in any way sufficient to establish prejudice under *Frady*.[7]

## II. UNCONSTITUTIONAL JURY AND GRAND JURY

■ Campbell next contends that the district court should have granted him the writ because his grand jury and trial jury were unconstitutional. Campbell introduced evidence at his Rule 3.850 hearing in an attempt to show that blacks were unconstitutionally excluded from both juries. *See Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972). Campbell relies on *Peters* in this case. *Peters* was essentially a standing case, however; it allows a white defendant, such as Campbell, to challenge the exclusion of blacks from juries. *See Watson v. United States,* 484 F.2d 34 (5th Cir.1973). As the predecessor to this court held in *Watson,* however, *Peters* does not apply retroactively. *Id.* Campbell was tried well before 1972 when the Court handed down *Peters;* thus, this claim affords Campbell no basis for relief.

## III. EXCLUSION OF PSYCHIATRIC TESTIMONY AT TRIAL

■ At trial, Campbell sought to introduce psychiatric evidence tending to show that, at the time of the murder, he was unable to control his impulses and was unable to premeditate.[8] The trial judge refused to admit this testimony. Campbell contends that the testimony should have been admitted because it was relevant to the jury's consideration of mercy and because it tended to negate premeditation. The mercy issue, resolved against Campbell by the Supreme Court of Florida, *see Campbell v. State,* 227 So.2d 873, 877 (Fla. 1969), is now moot because Campbell's

---

**6.** The opinion of the Florida Supreme Court describes the evidence at trial:

The victim of the crime was a deputy sheriff who was shot while attempting to arrest the appellant as a suspected bank robber. The state adduced evidence that showed conclusively *that the appellant had robbed a bank at* Kingsland, Georgia, and then fled in an automobile that he had rented under an assumed name. A good description of the get-away car and of the appellant was given to law enforcement officers; and officers at all levels—from both Georgia and Florida, alerted by radio, participated at one time or another in the pursuit of appellant at speeds generally exceeding 100 miles per hour. The case began at Kingsland, Georgia, proceeded to a point in Florida near Macclenney just south of the Georgia-Florida line where the fatal shooting occurred, and then to a point in Georgia just *north of the line where a road block had been* set up and the appellant was finally apprehended.

Testimony of witnesses to the shooting showed that the victim, Deputy Sheriff Fish, was in hot pursuit of the appellant, both travelling at a high rate of speed, when the appellant's car failed to make a turn and came to rest in a ditch. Deputy Fish and the appellant both got out of their cars and moved over to stand by the patrol car. There was evidence from which the jury could find that the deputy was holding a sawed-off shotgun in one hand and was trying to handcuff the appellant with the other. *It was also shown* that the deputy carried his revolver in a hol-

ster on his left hip with the handle pointed forward, that three shots had been fired from it, and that the bullet that fatally wounded Deputy Fish had been fired from it. The appellant's fingerprints were on the gun. The jury also had the right to find that the appellant snatched the gun from the holster and shot twice in quick succession and at close range and then fired the third shot to remove *the handcuff that the deputy had succeeded in* placing on one wrist. (It was shown that the appellant's own gun, which he had used in intimidating the bank employees during the robbery, had been thrown or had fallen out of his car when it struck the ditch.) The appellant then continued his flight in the patrol car and, a few minutes later, was apprehended at the road block set up by both Georgia and Florida law enforcement officers. The appellant stated to these officers that he took Deputy Fish's gun away from him and shot him twice as he was being handcuffed. At the trial, however, he testified that the pistol went off twice during a struggle with Deputy Fish but denied that he intended to shoot the deputy. His defense was not guilty, and not guilty by reason of insanity. As noted, the jury returned a verdict of guilty without recommendation to mercy. This appeal followed.

**7.** Campbell offered to prove only the facts discussed above.

**8.** Fla.Stat. § 782.04 defines murder as an "unlawful killing .... perpetrated from a premeditated design ...."

death sentence has been set aside. We conclude that the exclusion of the evidence offered to disprove premeditation did not violate the Constitution.

Campbell proffered the evidence in an attempt to prove what has become known as the "partial responsibility" defense. *See generally* LaFave & Scott, *Criminal Law* § 42 (1972); Lewin, *Psychiatric Evidence in Criminal Cases for Purposes other than the Defense of Insanity*, 26 Syr.L. Rev. 1051 (1975). The defense of partial responsibility differs from the defense of insanity in that the evidence, admitted only to negate specific intent in a relevant case, does not exonerate the defendant; the partial responsibility defense simply reduces the severity of the offense. *See id.* According to the best estimate of one commentator, in 1975 approximately 25 states had adopted the doctrine, *see Levin, supra*, at 1055 & n. 19, although Florida has not. *See Zeigler v. State*, 402 So.2d 365, 373 (Fla.1981); *Tremain v. State*, 336 So.2d 705, 706–08 (Fla.Dist.Ct.App.1976); *see also Admissibility of Expert Testimony as to Whether Accused had Specific Intent Necessary for Conviction*, 16 A.L.R.4th 666.

Campbell relies heavily on *Hughes v. Mathews*, 576 F.2d 1250 (7th Cir.1978), *pet. for cert. dismissed*, 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978). In *Hughes*, the court held that Wisconsin's exclusion of psychiatric evidence negating specific intent violated the Constitution, citing *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), as support. *Hughes* represents the high water mark in this area, however, and the tide has ebbed.[9] In *Muench v. Israel*, 715 F.2d 1124 (7th

Cir.1983), the Seventh Circuit substantially retreated from its position in *Hughes* and held constitutional Wisconsin's exclusion of psychiatric testimony on the issue of intent. After reviewing the scholarly opinions of the Seventh Circuit in *Hughes* and *Muench* and other relevant authorities, we conclude that Florida's exclusion of psychiatric testimony as to intent does not violate the Constitution, although our analysis differs slightly from that of the court in *Muench.*

A brief review of the *Hughes* and *Muench* cases well summarizes the law in this area. In *Hughes*, the court, in holding unconstitutional Wisconsin's exclusion of psychiatric testimony on the specific intent issue, relied heavily on *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), and *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). In *Washington*, the Supreme Court invalidated a Texas rule of evidence that prohibited a participant in a crime from testifying in favor of another participant—although either could testify for the prosecution. The Court held that this implicated the Sixth Amendment right to confront witnesses, applicable to Texas under the Fourteenth Amendment. 388 U.S. at 17, 87 S.Ct. at 1922. In *Chambers*, the Court invalidated a Mississippi evidentiary rule disallowing impeachment in certain circumstances that, at trial, prevented Chambers from soliciting indisputably relevant testimony. 410 U.S. at 285, 93 S.Ct. at 1040. The *Hughes* court held the psychiatric testimony competent, and thus concluded that its exclusion was similar to the exclusion in *Chambers* and violated due process.

In *Muench*, the Seventh Circuit substantially limited its *Hughes* decision.[10] Subse-

---

**9.** In *Wahrlich v. Arizona*, 479 F.2d 1137 (9th Cir.1973), *cert. denied*, 414 U.S. 1011, 94 S.Ct. 375, 38 L.Ed.2d 249 (1973), the Ninth Circuit rather summarily rejected a similar claim.

At first impression, this case resembles *Phillips v. Wainwright*, 624 F.2d 585 (5th Cir.1980). In *Phillips*, the court held constitutional the exclusion of psychiatric evidence to the effect that the defendant could not form an intent to commit the crime and that the defendant acted in

self defense. The court's review of the record indicated that, in *Phillips*, the trial judge only excluded the testimony on the second issue, self defense; the defendant then chose not to introduce the testimony of the psychiatrist. *Id.* at 589–90. Thus, *Phillips* is of little assistance here.

**10.** We recognize that the *Muench* and *Hughes* decisions turned in part on the difference between unitary and bifurcated trials in Wiscon-

quent to *Hughes*, the Wisconsin Supreme Court in *Steele v. State*, 97 Wis.2d 72, 294 N.W.2d 2 (1980), held psychiatric/specific intent evidence not "relevant or competent for the 'fine tuning' necessary to assess capacity to form an intent of the sort demanded by the criminal law." *Muench*, 715 F.2d at 1145 (Cudahy, J., dissenting). The *Muench* court held this determination to be a valid one, and upheld Wisconsin's rule excluding the evidence.

Interestingly, the *Muench* court also reviewed several Supreme Court cases (apparently overlooked in *Hughes*) dealing summarily with the present issue. *See Troche v. California*, 280 U.S. 524, 50 S.Ct. 87, 74 L.Ed. 592 (1929); *Coleman v. California*, 317 U.S. 596, 63 S.Ct. 162, 87 L.Ed. 487 (1942); *Fisher v. United States*, 328 U.S. 463, 66 S.Ct. 1318, 90 L.Ed. 1382 (1946). As the *Muench* opinion explains, these short per curiam opinions are decisions on the merits of this question binding on the circuit courts to the extent they have not been overruled by *Washington* or *Chambers*. We conclude that the circumstances in this type of case differ sufficiently from *Washington* and *Chambers* that those cases do not control our present decision.

As the *Muench* court noted, the psychiatric evidence at issue here is evidence of questionable utility. *See* 715 F.2d at 1142–43 (noting rejection of diminished capacity doctrine in many jurisdictions on this basis). The *Muench* court held that Wisconsin's specific rejection of the evidence on competency grounds justified a different decision than had been rendered in *Hughes*, 715 F.2d at 1137, and implied that the failure of a state court to articulate such considerations would mandate a different result, *id*. We do not agree completely with this logic. In some cases, the failure of a state to articulate an adequate justification for its law will result in the invalidation of that law—but, in this case, we do not believe Florida must explicitly state the rea-

sons for the rejection of psychiatric/specific intent evidence. The Florida courts' reasoning for excluding this evidence is that it would confuse the jury on the insanity issue, for which psychiatric testimony is relevant. *See Ezzell v. State*, 88 So.2d 280 (Fla.1956); *Tremain v. State*, 336 So.2d 705 (Fla.Dist.Ct.App.1976). Given the questionable foundation of such evidence, we hold that Florida may simply exclude it as irrelevant without attempting a comprehensive discussion of the subject. *Accord, Wahrlich v. Arizona*, 479 F.2d 1137 (9th Cir.1973) (*supra* note 9). Thus, the district judge properly refused to grant the writ on this issue.

## IV. IMPEACHMENT BY USE OF PRIOR CONVICTIONS

■ Campbell next asserts that his conviction is void because, at his trial, the prosecutor unconstitutionally impeached him by using prior, uncounseled convictions. The former Fifth Circuit (adopting the opinion of a district court) aptly summarized the law in this area in *McDonald v. Estelle*, 536 F.2d 667 (1976), *vacated and remanded on other grounds*, 433 U.S. 904, 97 S.Ct. 2967, 53 L.Ed.2d 1088 (1977):

There can be no question but that petitioner had a constitutional right to counsel at the time of the Arkansas conviction. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). To permit a conviction obtained in violation of *Gideon* to be used against a person either to support guilt or to enhance punishment erodes the principle of that case. *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). The use of prior convictions, void because uncounseled, for impeachment purposes deprives an accused of due process of law. *Loper v. Beto*, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972). In this case, the uncounseled conviction was not alleged for enhancement purposes but was introduced as part of petitioner's "prior

sin. We have reviewed the portions of the opinions dealing with that subject and find them not

relevant to our discussion and analysis here.

criminal record" under the provisions of Article 37.07, Texas Code of Criminal Procedure and was available to the jury for consideration in the assessment of the fifteen year sentence.

*Id.* at 671. Furthermore, it is clear that prior, uncounseled convictions may not be used for impeachment purposes even though those convictions predate the decision in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), in which the Court established the right to counsel. *See Loper v. Beto,* 405 U.S. 473, 485–86, 92 S.Ct. 1014, 1020–21, 31 L.Ed.2d 374 (Burger, C.J., dissenting) (noting conviction in *Loper* predated *Gideon* by 16 years).

 Even in light of *McDonald,* however, the district court properly refused to grant the writ on this issue. In the context of an alleged *Miranda* violation, this court recently described the burden of proof on a petitioner in a habeas proceeding as follows:

> In this habeas corpus proceeding, Alvord must prove his right to relief by a preponderance of the evidence. It is not the state's responsibility to prove that Alvord received the proper warnings; it is Alvord's responsibility to prove that he did not. *Corn v. Zant,* 708 F.2d 549, 563 (11th Cir.1983); *Hill v. Linahan,* 697 F.2d 1032, 1036 (11th Cir.1983); *Henson v. Estelle,* 641 F.2d 250, 253 (5th Cir.), *cert. denied,* 454 U.S. 1056, 102 S.Ct. 603, 70 L.Ed.2d 593 (1981). Alvord relies

solely on the above excerpt as proof of his contention that the officer did not advise him of his right to have counsel appointed for him. At the evidentiary hearing in the district court, 564 F.Supp. 459, Alvord made no effort to elaborate on the officer's testimony as it appears in the state transcript. From the transcript, we conclude that Alvord failed to meet his burden of proof.

*Alvord v. Wainwright,* 731 F.2d 1486, at 1488–89 (11th Cir.1984) (on petition for rehearing) (footnote omitted). In this case Campbell has also failed to prove his right to relief; we can find no proof in the record that Campbell's prior convictions—which the prosecutor clearly used for impeachment at trial—were obtained without affording Campbell counsel. In the same vein, there is no proof Campbell was entitled to counsel in those proceedings. Although the district court refused to grant Campbell an evidentiary hearing, *see supra* § I, Campbell did not request a hearing on this issue or offer such proof to the district court. Thus, he cannot now argue that he should have received a hearing.[11]

The judgment of the district court is AFFIRMED.

---

**11.** Campbell's claimed *Brady* violation (claim M) also fails on this basis.