**Willie J. SINCLAIR, Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT and Jim Smith, Respondents-Appellees.**

**No. 84–3820.**

United States Court of Appeals, Eleventh Circuit.

April 20, 1987.

---

Robert Woolfork, Atty., Tallahassee, Fla., for petitioner-appellant.

John W. Tiedemann, Asst. Atty. Gen., Tallahassee, Fla., for respondents-appellees.

Before FAY and KRAVITCH, Circuit Judges, and HENLEY *, Senior Circuit Judge.

HENLEY, Senior Circuit Judge.

Willie J. Sinclair filed a petition for habeas corpus in the district court, pursuant to

---

* Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designa- tion.

28 U.S.C. § 2254, alleging that (1) he was denied effective assistance of trial counsel; (2) a key witness was incompetent to testify; (3) he was denied a speedy trial; and (4) the prosecution suppressed evidence favorable to his defense. The United States Magistrate[1] granted the State's motion for summary judgment. Sinclair appeals arguing that the magistrate had no authority to grant the motion, and, in the alternative, he was entitled to an evidentiary hearing on his allegations. We affirm in part and reverse in part.

## BACKGROUND

Sinclair was indicted in a Florida state court for the fatal shooting of Elvin Speights. On the day of the murder Sinclair and Elvin had a fight over money matters. The fight broke up and both men went home. Two witnesses, Cleveland Speights, Elvin's son, and Frank Philips, testified that they were in Elvin's trailer home when Sinclair came over later in the day. They testified that the following events occurred. Elvin was passed out in a drunken stupor in a bedroom when Sinclair came to the trailer. Sinclair had a few angry words with Cleveland, then left, returning shortly with a shotgun. Frank realized that there was going to be trouble and he left. Cleveland tried to awaken his father, but could not. He had a minor tussle with Sinclair and then he left through a back window to go to a neighbor's house for help. What happened immediately after that is unclear, but Sinclair apparently also left the trailer. Someone called the police and told them that there was "a man with a gun after another man." Cleveland testified that a short time later he saw Sinclair reenter his father's trailer with a shotgun, heard a shot, and then saw Sinclair leave the trailer and drive off. When he returned to the trailer with the police, his father was fatally wounded.

Sinclair briefly testified at trial. His testimony was contradictory to both Frank and Cleveland's testimony. He testified that he did go over to Elvin's trailer, but that he did not have a gun and that nobody else was there except Elvin. He stated that he and Elvin had a talk, resolved their dispute, and then he went home.

During the trial the State introduced into evidence a spent green shotgun shell, which it stated was found in Sinclair's yard, and three green shells. A State officer testified that he remembered finding some green shells, but could not remember whether the shells were in the defendant's gun or whether he found them in Sinclair's house from which a shotgun was recovered. A firearm expert testified that the pellets recovered from Speights' body were the same type of pellets as those found in the loaded green shells. The expert also testified that the spent shotgun shell found in the yard was of the same type as the other green shells, but he could not determine whether it had been fired from defendant's gun.

In July of 1980 a jury found Sinclair guilty of murder in the second degree, and he was sentenced to fifteen years imprisonment. The Florida First District Court of Appeals affirmed his conviction without an opinion. *Sinclair v. State*, 412 So.2d 479 (Fla.Dist.Ct.App.1982). Sinclair filed a motion for post-conviction relief under Fla.R. Crim.P. 3.850, which was also denied without opinion. He then filed this petition for writ of habeas corpus in the district court.

Both Sinclair and the State consented to have the case decided by a United States Magistrate. The first magistrate to hear the case, Magistrate Everett M. Anderson, denied the State's motion for summary judgment. The district court[2] voided this decision on procedural grounds and turned the proceedings over to Magistrate Crongeyer. Magistrate Crongeyer granted the State's motion for summary judgment, and Sinclair appealed directly to this court.[3]

---

1. The Honorable Robert L. Crongeyer, Jr., United States Magistrate, Northern District of Florida.

2. The Honorable Maurice Paul, United States District Judge, Northern District of Florida.

3. Sinclair does not raise on appeal the issue of whether he was given notice of the motion for summary judgment in Magistrate Crongeyer's court, and therefore we need not address it.

## DISCUSSION

### I. Statutory Authority of Magistrate.

 For reasons which are not entirely clear, the case was first assigned to part-time Magistrate Anderson. The district court held that Magistrate Anderson's decision was void because he could not conduct the proceedings under the requirements of the Federal Magistrate Act, 28 U.S.C. § 636(c)(1) (1979 amendment). This statute states a part-time magistrate may conduct proceedings only if he serves as a full-time judicial officer or if the chief judge of the district court certifies that a full-time magistrate is not reasonably available. *Id.* Neither of these requirements was met. The district court also stated that the parties had agreed in the consent form to have the proceedings conducted by Magistrate Crongeyer, a full-time magistrate, not Magistrate Anderson.

Sinclair argues that the district court erred in voiding Magistrate Anderson's decision. He states that there is no proof that Magistrate Crongeyer was available, Crongeyer's name was not written on the consent form until after the parties had signed it, and he was entitled to rely on the court's first assignment of magistrate. These arguments are without merit. They fail to dispute the clear showing that Magistrate Anderson was not qualified to conduct the proceeding. Obviously Crongeyer was available. He did in fact conduct proceedings and he did so with consent.

 Sinclair next argues that Magistrate Crongeyer had no authority to decide a summary judgment motion. He argues that the Federal Magistrate Act, 28 U.S.C. § 636(c), which permits magistrates to enter judgments in civil cases under certain conditions, is unconstitutional because it violates article III of the Constitution. At least nine other circuits which have considered this issue have held that section 636(c) is constitutional because the act requires that the parties and the district court consent to the transfer of the case to a magistrate and because the district court retains sufficient control over the magistrate. *See Gairola v. Commonwealth of Virginia Department of General Services,* 753 F.2d 1281, 1284–85 (4th Cir.1985), *and*

*cases cited therein.* We find the reasoning of these cases persuasive and agree that subsection (c) of 28 U.S.C. § 636 is not unconstitutional. Thus we turn to the question whether Magistrate Crongeyer's summary judgment was erroneous.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the case may be decided as a matter of law. Fed.R.Civ.P. 56(c). The evidence and all reasonable inferences which can be drawn therefrom should be viewed in the light most favorable to the party opposing the motion. *Thrasher v. State Farm Fire and Casualty Co.,* 734 F.2d 637, 638 (11th Cir.1984).

### II. Ineffective Assistance of Counsel.

Sinclair argues that he was denied effective assistance of trial counsel because trial counsel failed to adequately investigate and prepare his case for trial. He states that as a result of inadequate preparation serious errors were made at trial. The affidavit of trial counsel was submitted to the magistrate, and it disputes Sinclair's allegations. Trial counsel stated that a thorough investigation was made and he explained in detail why the actions or omissions complained of were matters of trial strategy.

In order to show that trial counsel's performance was so defective as to require reversal of a conviction, defendant must show that counsel's performance was seriously deficient and that he was prejudiced by the deficiency. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). There is a strong presumption that trial counsel's conduct is the result of trial strategy, and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690, 104 S.Ct. at 2066.

### A. Submission of false evidence and suppression of favorable evidence.

 Sinclair insists that the police took red shells from his shotgun, not the green ones which were introduced at trial. He argues that the police switched the shotgun shells in order to link his shotgun with the

spent green shell found in his yard. If a proper investigation had been made, Sinclair argues, this switching could have been shown at trial. Sinclair seems to argue that trial counsel should have made a formal charge of prosecutorial misconduct before the judge, or, alternatively, he should have impeached the credibility of the officer who testified that he found green shells. Trial counsel stated that he did not charge the State with introducing false evidence and withholding favorable evidence because there was no evidence to support such an allegation and he had no evidence with which to impeach the officer's credibility. It was simply a matter of Sinclair's word against that of the State.

Sinclair does not state what supporting evidence trial counsel could have found if a more thorough investigation had been made (other than forcing a confession from the State that its officers were lying and had the red shells). The issue here is simply one of credibility; the State said the shells were green, Sinclair now says they were red. At trial, Officer Bill Sheffler testified that he found the shells and that as best as he could remember they were green. He stated that he turned over everything he found to his lieutenant and that he did not add anything or subtract anything. On cross-examination Officer Sheffler admitted that he did not remember whether the shells were found in the gun or not. Sinclair's own testimony was very limited. He did not testify as to the color of his shells; he only testified that he never took a gun over to Elvin's and he did not shoot him.

The inability of trial counsel to show that a state witness is lying, particularly when there is no supporting evidence, does not demonstrate ineffective assistance of counsel. Sinclair does not state what trial counsel effectively should have done differently, nor does he mention any evidence which trial counsel failed to use. We agree with the magistrate that this claim is without merit.

### B. Failure to establish alibi.

■ Sinclair argues that counsel should have established an alibi defense by calling Mr. Ryals and his wife and Felicia Blair. He argues that they would have testified that he had left Elvin Speights' trailer before the crime occurred and that they could have testified as to who was "the man with the gun after another man." Trial counsel stated that he interviewed these three witnesses and most, if not all, of the residents of the trailer park. His investigation revealed that not only would their testimony not have supported Sinclair's alibi, but it would have tended to refute it. Furthermore, his investigation indicated that the two men referred to were Sinclair and Elvin Speights. In his response to the State's motion to dismiss, Sinclair did not dispute trial counsel's findings. He stated only that it was unclear from trial counsel's affidavit whether counsel made the investigation himself or whether he relied on police reports.

Taking Sinclair's claims as true, Sinclair fails to show that trial counsel erred in failing to call these witnesses. Although Mr. Ryals and his wife and Felicia Blair may have testified that they saw Sinclair leave the area at one time, Sinclair does not allege that they would testify that he never returned or that they knew he was somewhere else when the murder occurred. (The testimony of other witnesses indicated that Sinclair left the trailer and then returned at least once that day.) Their testimony would not have been particularly helpful. Since trial counsel's investigation indicated that Felicia Blair had made the call to the police and she was referring to Sinclair when she said that there was a "man after another man with a gun," there was certainly no error in deciding not to call her as a witness. This aspect of the claim of ineffective assistance of counsel is without merit.

### C. Failure to properly cross-examine expert witness.

■ Sinclair argues that trial counsel failed to elicit possible favorable evidence by asking the firearm expert if he could tell whether defendant's gun had been fired around the time of the murder. If the expert would have testified that the shotgun had not been fired in several months, as Sinclair claims, then the evidence would have been favorable. However, trial coun-

sel stated that as a result of his pre-trial investigation he was aware that the expert witness could not tell whether Sinclair's gun had been fired recently, and therefore he believed that the question was best left unasked. Trial counsel's decision was a matter of strategy, and the failure to ask the question did not harm Sinclair's case. This argument is without merit.

### D. Failure to call witness.

■ Sinclair argues that trial counsel should have called a Mr. Pridgeon to testify. In an affidavit attached to Sinclair's petition, Pridgeon stated he would have testified that Cleveland made statements which exonerated Sinclair. Pridgeon and another witness, Jesse Edwards, were in jail with Cleveland, and both were present when Cleveland made remarks about his father's murder. Edwards testified at trial that Cleveland said he knew who killed his father, but he was not going to tell. Trial counsel stated he decided not to call Pridgeon as a witness since his testimony would have been inconsistent with Edwards' and because the prosecution would have been able to destroy his credibility on cross-examination. Trial counsel also stated that he explained his strategy to Sinclair and Sinclair agreed to follow his advice.

Neither Pridgeon nor Sinclair states exactly what Pridgeon's testimony would have been, but since Edwards and Pridgeon were both present when Cleveland made these statements any testimony by Pridgeon as to exculpatory statements would have been inconsistent with Edwards' testimony. Sinclair does not address the argument that Pridgeon's credibility would have been destroyed on cross-examination. We are unwilling to say that trial counsel's decision was not based on sound strategy.

### III. Violation of Due Process Rights.

Sinclair's due process claim is somewhat more disturbing. He alleges that his due process rights were violated because the court allowed a mentally ill person, Cleveland Speights, to testify. When Speights was called to testify, trial counsel objected

on the basis that Speights had been previously adjudicated incompetent to stand trial. He argued that the State should be required to show that Cleveland was now competent to be a witness. The trial judge overruled the objection without explanation and Cleveland was allowed to testify.

■ The State asserts that on account of procedural default federal habeas is barred unless the prisoner can demonstrate cause for and prejudice from the default. *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). The procedural default defense here has two aspects. First, the State insists that Sinclair was in procedural default in the trial court because, although he made objection immediately prior to Speights' testimony, he was under duty to make that objection prior to commencement of the trial in order that the State might appeal any adverse ruling, citing *State v. Horvatch,* 413 So.2d 469, 470 (Fla.Dist.Ct.App.1982), and that Sinclair was under obligation to move to strike Speights' testimony once it was heard, citing *Williams v. State,* 435 So.2d 863 (Fla. Dist.Ct.App.1983).

Neither case, however, arguably supports the State's position. While *Horvatch* stands for the proposition that the state may appeal a pretrial ruling admitting or suppressing evidence, 413 So.2d at 470, it by no means requires a pretrial motion to suppress or exclude testimony by an alleged incompetent witness.

*Williams* does hold that a motion to strike must be made in circumstances where there was no contemporaneous objection to the questioned testimony, 435 So.2d at 863, but failure of trial counsel to belabor a point once raised and clearly lost is not viewed in Florida as a procedural default. *See Henry v. Wainwright,* 686 F.2d 311, 314 (5th Cir. Unit B 1982), *vacated,* 463 U.S. 1223, 103 S.Ct. 3566, 77 L.Ed.2d 1407 (1983).[4]

4. In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982), we adopted as binding precedent all of the post-September 30, 1981 decisions of the former Fifth Circuit Unit B.

Here, it is difficult to imagine a more timely objection. Immediately before Cleveland Speights testified counsel objected, thus clearly raising in advance the competence of the witness and casting upon the court and prosecution the burden of conducting at least some further inquiry into the competence of a witness who the same trial judge had earlier adjudged incompetent to stand trial and had committed to a mental institution.

■ The second aspect of the alleged procedural default problem relates to the argument that since the Florida State Court affirmed Sinclair's conviction without opinion and since both procedural default and the merits were urged there, *Sinclair,* 412 So.2d at 479, it should be conclusively presumed that procedural default exists, that the affirmance was on procedural default grounds and that in federal habeas proceedings "cause and prejudice" under the teaching of *Sykes,* 433 U.S. at 87, 97 S.Ct. at 2506, must be shown.

Procedural default is a formidable hurdle engineered by *Sykes* at least in part to prevent litigants from foregoing contemporaneous objection in order to sandbag the state by arguing previously unraised allegations of error in subsequent federal habeas proceedings. *Id.* at 89, 97 S.Ct. at 2507.

This Circuit to a point has approved the presumption that when trial procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the federal habeas petitioner must show cause and prejudice. *Campbell v. Wainwright,* 738 F.2d 1573, 1578 (11th Cir.1984) (citing with approval *Martinez v. Harris,* 675 F.2d 51, 54 (2d Cir.), *cert. denied,* 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982)), *cert. denied,* — U.S. —, 106 S.Ct. 1652, 90 L.Ed.2d 195 (1986).

However, in federal habeas proceedings the presumption of decision on grounds of procedural default is not so conclusive that it may be invoked merely by suggesting a clearly unfounded possibility of such default. Close examination of reported feder-

al appellate decisions discloses no such holding of baseless conclusivity.

For example, in *Campbell,* which relied on *Martinez,* not only was there clearly no evidence of contemporaneous objection to a questioned instruction but also there was no evidence to support the petitioner's claim of improper burden shifting by the instruction. *See Campbell,* 738 F.2d at 1578–79. In *Martinez* as well there was no contemporaneous objection in the state trial court, and the *Martinez* court made clear that its discussion was limited to silence on the part of the state appellate court "when there is an adequate state procedural ground for sustaining the conviction...." 675 F.2d at 54, n. 5.

An observation by Judge Roney (now Chief Judge) in *Ratcliff v. Estelle,* 597 F.2d 474 (5th Cir.), *cert. denied,* 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979),[5] inferentially points up the necessity of some arguable merit to a procedural default claim. In discussing a clear failure to object to composition of a grand jury, Judge Roney noted that "[h]aving decided here that the state court applied its procedural default rule *and did so correctly,* the federal courts must abide by that decision, cause for failure to object ... not having been shown." *Id.* at 478 (emphasis supplied). Obviously, it is nonsense to honor a presumption of procedural default where no such default arguably exists, and we find no default here.

■ Turning then to the merits of appellant's due process claim, it may be noted "that a lunatic may be allowed to testify if he is able to [comprehend] the obligation of an oath and give a correct account of matters he has seen or heard...." *Shuler v. Wainwright,* 491 F.2d 1213 (5th Cir.1974). But if a patient in a mental institution is offered as a witness, an opposing party may challenge competency, whereupon it becomes the duty of the court to make such an examination as will satisfy the court of the competency of the proposed witness. *Id.* at 1223–24. And if the challenged testimony is crucial, critical or high-

**5.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), we adopted as binding precedent decisions of the Fifth Circuit decided prior to September 30, 1981.

ly significant, failure to conduct an appropriate competency hearing implicates due process concerns of fundamental fairness. *See Hills v. Henderson*, 529 F.2d 397, 401 (5th Cir.), *cert. denied*, 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976).

This is not to say "that *every* allusion as to incompetency of a witness [is to] be exhaustively explored by the trial judge, particularly where all other evidence substantiates competency." *United States v. Crosby*, 462 F.2d 1201, 1203 n. 5 (D.C.Cir. 1972). But in the present situation, as in *Crosby, id.* at 1203, we believe a "red flag" of material impact on competency was flying. Cleveland Speights was offered as an eyewitness to many of the critical aspects of the State's case against Sinclair. He had been declared incompetent to stand trial by the judge who was trying Sinclair. Only by a reasonable exploration of all the facts and circumstances could the trial judge exercise sound discretion concerning the competency of the witness and the findings of the court with respect to competency should have been made to appear on the record. The record reflects no searching exploration and no stated reasons for overruling appellant's competency objections.

In such circumstances, we are obliged to remand for a determination on the record of the competency of the witness Cleveland Speights. If the witness was competent, then appellant should suffer adverse judgment on his due process claim. If the witness was incompetent, then, unless admission of his testimony was harmless beyond a reasonable doubt, a violation of due process should be found and judgment entered accordingly.

*IV. Suppression of Favorable Evidence.*

Sinclair urges as an independent ground for relief that the State suppressed exculpatory evidence by failing to reveal that red shells, not green, were taken from his shotgun. Sinclair was aware of the alleged switching of evidence at the time of trial, but failed to raise this issue in the state court. He claims that the cause of his failure to raise the claim at trial was the ineffective assistance of counsel. In that connection we have discussed this claim and held it was without merit. *See* *supra* II A. We agree with the magistrate that Sinclair has failed to show cause and therefore independent habeas review of the suppression claim is barred.

*V. Denial of Speedy Trial.*

Sinclair has abandoned his final claim concerning the denial of his right to a speedy trial. He now concedes that he waived this right. We decline to accept the State's suggestion to impose sanctions on Sinclair for making a false allegation in his habeas petition. We do not think his misstatement is so outrageous as to justify the dismissal of the entire petition.

### CONCLUSION

As indicated, we REMAND for a determination of the question whether Sinclair's due process rights were violated when Cleveland Speights was permitted to testify. Leave is given to grant an evidentiary hearing on this issue and to conduct such other and further appropriate proceedings as may be consistent with this opinion. The grant of summary judgment in regard to the remaining issues is AFFIRMED.