Virgil Delano PRESNELL, Jr., Petitioner-Appellee,

v.

Ralph KEMP, Warden, Georgia Diagnostic and Classification Center, and Michael J. Bowers, The Attorney General of the State of Georgia, Respondents-Appellants.

No. 86–8369.

United States Court of Appeals, Eleventh Circuit.

Jan. 11, 1988.

Susan V. Boleyn, Asst. Atty. Gen., Atlanta, Ga., for respondents-appellants.

John L. Taylor, Jr., Vincent, Chorey, Taylor & Feil, John L. Schaub, Chorey & Taylor, Atlanta, Ga., for petitioner-appellee.

Before TJOFLAT, VANCE and KRAVITCH, Circuit Judges.

TJOFLAT, Circuit Judge:

It is settled law that a state prisoner may not obtain federal habeas corpus relief on a claim that the state courts refused to hear because the petitioner did not raise his

claim seasonably at trial or on direct appeal from his conviction, unless the petitioner shows cause for not raising the claim and resulting prejudice. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). This case presents the question whether a petitioner may be barred from federal habeas corpus relief on a claim that the state habeas corpus court refused to hear because the petitioner did not present it seasonably to that court.[1]

## I.

Petitioner, Virgil Delano Presnell, Jr., is a Georgia death row inmate.[2] Petitioner challenges his convictions entered on August 26, 1976 for simple kidnapping, kidnapping with bodily injury, and malice murder on the ground that the trial judge's instructions to the jury at the close of all the evidence placed on him the burden of persuasion on the issue of criminal intent, an essential element of the crimes with which he was charged,[3] in violation of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985).[4] The trial judge instructed the jury as follows:

> I give you certain presumptions of law that are applicable to this case. A presumption is a conclusion which the law draws from some given facts. Each of these presumptions [is] rebuttable; that is, they are subject to being overcome by evidence to the contrary. They are:
>
> . . . .

1. In *Morris v. Kemp,* 809 F.2d 1499 (11th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 2486, 96 L.Ed.2d 378 (1987), we applied the cause and prejudice test and refused to review the merits of a claim a state habeas court had declined to hear because the petitioner had presented the claim in a successive habeas petition, in violation of Georgia's successive petition rule, Ga. Code Ann. § 9–14–51 (1982). In *Morris,* the petitioner's attorney, in the presence of the petitioner, expressly abandoned an ineffective assistance of counsel claim during the evidentiary hearing on the petitioner's first state habeas petition. After the state court denied relief on the petitioner's remaining claims, the petitioner, having retained a new lawyer, filed a second petition presenting the ineffective assistance of counsel claim his former attorney had earlier abandoned. The state habeas court rejected his petition as successive, and he sought federal habeas relief, raising the ineffective assistance claim. The district court refused to hear the claim, concluding that the petitioner had "deliberately bypassed" his state remedy. We affirmed, finding that the petitioner "committed a procedural default in failing to pursue an ineffective assistance claim in his first state habeas proceeding," *id.* at 1502, and, having shown no cause for his default, could not litigate the merits of his claim in federal court.

Unlike *Morris,* the present case involves a claim not raised in the first state habeas proceeding. Moreover, unlike the petitioner in *Morris,* petitioner here was not present when his attorney decided to forgo the defaulted claim; in fact, petitioner had no knowledge of his claim at the time of his default. Given these distinguishing circumstances, it is debatable whether *Morris'* holding extends to the facts of this case. Accordingly, we address the threshold question presented by this appeal: whether the "deliberate bypass" test of *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), or the "cause and prejudice" test of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), determines the validity of the excuse for petitioner's state procedural default.

2. Petitioner's criminal conduct, as well as the procedural history of his prosecution and the appellate review thereof are set out in *Presnell v. State,* 241 Ga. 49, 243 S.E.2d 496 (1978), *Presnell v. Georgia,* 439 U.S. 14, 99 S.Ct. 235, 58 L.Ed.2d 207 (1978), and *Presnell v. State,* 243 Ga. 131, 252 S.E.2d 625, *cert. denied,* 444 U.S. 885, 100 S.Ct. 176, 62 L.Ed.2d 115 (1979).

3. Petitioner was also convicted of statutory rape. Because statutory rape does not require criminal intent, petitioner's claim that the trial judge's instruction on criminal intent was improper could not affect his conviction for that crime.

4. The instruction on criminal intent condemned in *Sandstrom* created an irrebuttable presumption that a person of sound mind intends the natural and probable consequences of his acts, thus eliminating the state's burden of proof on an essential element of the charged offense, in violation of the due process clause. The instruction on criminal intent condemned in *Franklin* created a rebuttable presumption that a person of sound mind intends the natural and probable consequences of his acts. The *Franklin* instruction, fairly read, denied the defendant due process because it shifted to the defendant the burden of going forward with the evidence, or both the burden of going forward and the burden of persuasion, with respect to an essential element of the offense.

The acts of a person of sound mind and discretion are presumed to be the products of the person's will. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts.[5]

Petitioner did not object to this instruction in the trial court. Nor did he object to the instruction on appeal to the Supreme Court of Georgia, *Presnell v. State*, 241 Ga. 49, 243 S.E.2d 496 (1978), or on certiorari to the Supreme Court of the United States, *Presnell v. Georgia*, 439 U.S. 14, 99 S.Ct. 235, 58 L.Ed.2d 207 (1978). After petitioner's conviction and death sentence for malice murder were upheld,[6] his execution was set for January 11, 1980.

On January 8, 1980, petitioner sought a writ of habeas corpus in the Superior Court of Butts County, Georgia, and a stay of his execution. He attacked his conviction on fourteen grounds, none of which challenged the trial court's instruction on criminal intent. The superior court stayed petitioner's execution and, on January 23, 1980, following an evidentiary hearing, denied relief. The Georgia Supreme Court denied petitioner's application for a certificate of probable cause to appeal on March 19, 1980. The United States Supreme Court denied petitioner's application for a writ of certiorari on October 6, 1980. *Presnell v.*

*Zant*, 449 U.S. 891, 101 S.Ct. 254, 66 L.Ed. 2d 120 (1980).

On June 15, 1981, two days before his rescheduled execution, petitioner sought a writ of habeas corpus in the United States District Court for the Northern District of Georgia and a stay of execution. In his petition, he raised for the first time a claim challenging the trial judge's jury instruction on criminal intent:[7]

During the guilt-innocence phase of Petitioner's trial, the Court instructed the jurors in a manner that permitted the State to prove its case without establishing all essential elements of the crime beyond a reasonable doubt and shifted to Petitioner the burden of proof of an essential element of the crime as defined by statute, in violation of his rights guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

Petitioner alleged that the court's instruction was similar to the instruction condemned by the Supreme Court in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), because it created an irrebuttable presumption of intent, thereby improperly placing on him the burden of persuasion and violating his right to due process.

The district court granted a stay of petitioner's execution. After several delays in

---

**5.** The trial judge further instructed the jury:

A person will not be presumed to act with criminal intention, but the trier of facts, and that's you, the Jury, may find such intention upon consideration of the words, conduct, demeanor, motive, and all of the other circumstances connected with the act for which the accused is prosecuted.

A specific intent to commit the crimes charged in this indictment and each count thereof is an essential element that the State must prove beyond a reasonable doubt. Intent is always a question for the Jury and is ordinarily ascertained by the acts and conduct. Intent may be shown in many ways, provided the Jury finds that it existed from the evidence produced before them. It may be inferred from the proven circumstances or by the acts and conduct or it may be presumed when it is the natural and necessary consequences of the act.

**6.** Petitioner was originally sentenced to death on three counts: malice murder, rape, and kid-

napping with bodily injury. The Georgia Supreme Court affirmed the conviction and death sentence for malice murder, but vacated the conviction and death sentence for rape, imposing a conviction of statutory rape in its place, and also vacated the death sentence for kidnapping with bodily injury. *Presnell v. State*, 241 Ga. 49, 243 S.E.2d 496 (1978). The United States Supreme Court granted certiorari and vacated the death sentence for malice murder. *Presnell v. Georgia*, 439 U.S. 14, 99 S.Ct. 235, 58 L.Ed.2d 207 (1978). On remand, the Georgia Supreme Court clarified its earlier opinion and reinstated the death sentence for malice murder, having concluded that the United States Supreme Court had misread its earlier opinion. *Presnell v. State*, 243 Ga. 131, 252 S.E.2d 625 (1979). The United States Supreme Court thereafter denied certiorari to review the Georgia court's decision. *Presnell v. Georgia*, 444 U.S. 885, 100 S.Ct. 176, 62 L.Ed.2d 115 (1979).

**7.** In this habeas petition, petitioner also raised nineteen other claims for relief.

the prosecution of petitioner's claims, the court, on November 30, 1983, noted that petitioner's *Sandstrom* claim had not been exhausted and that he was presenting a "mixed" petition, containing both exhausted and unexhausted claims,[8] that had to be dismissed unless he abandoned his unexhausted claims. *See Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Petitioner declined to abandon his unexhausted claims; accordingly, on January 13, 1984, the court dismissed his petition without prejudice.

On January 26, 1984, petitioner returned to the Superior Court of Butts County, Georgia to exhaust his *Sandstrom* claim.[9] The State moved the court to dismiss his habeas petition as successive pursuant to Ga.Code Ann. § 9–14–51 (1982). That statute provides:

> All grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised by a petitioner in his original or amended petition. Any grounds not so raised are waived unless the Constitution of the United States or of this state otherwise requires or unless any judge to whom the petition is assigned, on considering a subsequent petition, finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition.

On July 23, 1984, the superior court held a hearing on the State's motion to dismiss to determine whether his *Sandstrom* claim "could ... reasonably have been raised" in the first petition he presented to the state court in 1980. On October 6, 1984, the court granted the State's motion, finding that petitioner had waived his *Sandstrom* claim:

Petitioner claims that an erroneous instruction to the jury on criminal intent shifted the burden of proof away from the State, thereby violating his right to due process of law. Petitioner bases his claim on *Sandstrom v. Montana,* 442 U.S. 510 [99 S.Ct. 2450, 61 L.Ed.2d 39] (1979). This case was decided six months prior to Petitioner's first habeas corpus petition. A claim based on this case could easily have been raised in the first petition or, at least, in an amendment to that first petition. Furthermore, *Sandstrom* itself was not new law, but was based on the same principles which were ennunciated [sic] in the earlier decisions of *In Re Winship,* 397 U.S. 358 [90 S.Ct. 1068, 25 L.Ed.2d 368] (1970) and *Mullaney v. Wilbur,* 421 U.S. 684 [95 S.Ct. 1881, 44 L.Ed.2d 508] (1975).

Petitioner had a copy of his transcript which contained the jury charges at the time of his original habeas petition. The law set forth in the *Sandstrom* case was not "new" law at that time. Not only was *Sandstrom* already decided, but the principles had been previously set forth in several earlier cases. The issue is not one which is constitutionally nonwaivable and it could have been reasonably raised in Petitioner's earlier petition. Accordingly, this claim is found to have been waived.

Petitioner sought review in the Georgia Supreme Court, but the court denied his application for a certificate of probable cause to appeal on November 16, 1984.

On May 15, 1985, petitioner returned to the district court, again presenting his *Sandstrom* claim.[10] He contended that the Supreme Court's recent decision in *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965,

---

**8.** The court noted that one other claim, relating to the adequacy of the State's notice to petitioner as to the aggravating circumstances the State would rely on in seeking the death penalty, was also unexhausted.

**9.** Petitioner presented three claims in his second state petition—the two claims found to be unexhausted in his federal petition, and a third claim, relating to the ineffective assistance of counsel. The superior court found that all three claims reasonably could have been raised in

petitioner's first state habeas proceeding, and refused to consider their merits.

**10.** Petitioner's *Sandstrom* claim was only one of twenty-one claims raised in petitioner's second federal petition. Because the district court reached only petitioner's *Sandstrom* claim, and did not adjudicate the remaining twenty claims, we do not address the merits of the remaining claims. The district court's failure to dispose of all of petitioner's claims does not deprive us of the authority to review the claim before us. *See infra* note 14.

85 L.Ed.2d 344 (1985), which struck down a jury instruction creating a rebuttable presumption of criminal intent, reinforced his argument that the trial court's instruction on criminal intent had denied him due process.

In answering the petition, the State pointed out that petitioner had committed a procedural default by not presenting his claim in his first state habeas petition, as required by Georgia's successive petition statute. Citing *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the State argued that unless petitioner could show cause for not complying with the successive petition statute, he should not be allowed to litigate the claim in federal court.[11] The State also argued that *Franklin* did not provide cause for his default because it did not create "new law"; rather, earlier Supreme Court precedent, such as *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), had established that shifting the burden of persuasion to the defendant, requiring him to disprove an essential element of a crime, violated due process. Therefore, the State argued, petitioner could not be excused from his failure to raise the claim in his first habeas proceeding in state court.

The district court rejected the State's argument, ruling that petitioner could not be charged with a procedural default because he did not waive his *Sandstrom* claim when he failed to raise it in his first state habeas proceeding. The court based its decision on its observation that a reasonably competent attorney would not have believed that the instruction violated *Sandstrom,* because the *Sandstrom* instruction created an *irrebuttable* presumption of intent, while the instruction in petitioner's case created a *rebuttable* presumption of intent. In short, petitioner's attorney acted reasonably in not challenging the instruction in petitioner's first state habeas proceeding. The court concluded, however, that a reasonably competent attorney would have believed that the instruction in petitioner's case violated *Franklin,* but obviously could not have been expected to challenge the instruction until *Franklin* was decided.[12] Under the circumstances, petitioner did not waive his claim and had an excuse for his procedural default.[13] The district court accordingly reached the merits, and found that the trial judge's instructions shifted to petitioner the burden of persuasion on an essential element of the crimes in question and violated petitioner's right to due process under *Franklin.* Based on this finding, the court issued the writ of habeas corpus.

The State appeals,[14] contending that the writ was improperly issued. The State ar-

---

**11.** As noted in the text, petitioner did not object to this instruction at trial. Georgia, however, unlike many states, does not have a "contemporaneous objection" rule, *see Stynchcombe v. Floyd,* 252 Ga. 113, 311 S.E.2d 828 (1984), and accordingly petitioner did not have to object this instruction at trial to preserve it for review in a state habeas corpus proceeding.

**12.** The court concluded that in petitioner's case, a reasonably competent attorney would not challenge the instruction on criminal intent until *Franklin* was decided because *Franklin's* application of *Sandstrom* to strike down an instruction creating a rebuttable presumption of intent could not have been anticipated. Therefore, in the court's view, *Franklin* created "new law."

**13.** The precise holding of the district court is somewhat unclear. In its order, the district court cited neither *Fay* nor *Sykes.* The court's

order, taken literally, seems to indicate that the court was applying *Fay's* "deliberate bypass" standard because it stated that "petitioner did not *knowingly waive* his right to raise" his *Sandstrom* claim. Nonetheless, we believe that, in effect, the court applied the *Sykes* cause and prejudice test because the court focused on the reasonableness of petitioner's counsel's conduct, rather than petitioner's actual knowledge and conduct. Moreover, the court based its decision on the supposed novelty of the decision in *Franklin,* a factor that would be meaningless in determining whether a lay defendant, unschooled in the law, had committed a deliberate bypass.

**14.** Although the district court reached a final determination on only one of petitioner's twenty-one claims, the district court's disposition is nonetheless a final judgment within the meaning of the final judgment rule. *See Blake v. Kemp,* 758 F.2d 523, 524–25 (11th Cir.), *cert.*

gues that petitioner cannot demonstrate cause for his procedural default because *Franklin* is merely a straightforward application of *Sandstrom* and should have been anticipated by petitioner's counsel when he brought petitioner's first state habeas petition.

Petitioner urges us to affirm the district court for alternative reasons. First, he argues that the district court was correct in concluding that *Franklin* established new law and could not have been anticipated by counsel when he brought the first state habeas petition, and that petitioner therefore satisfied the cause prong of the *Sykes* test. Second, petitioner argues that *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), rather than *Sykes,* provides the standard for determining whether a procedural default that occurred during a state court collateral attack should be excused. Under the *Fay* standard, the state would have to prove that petitioner "deliberately bypassed" a state remedy. Petitioner urges us to affirm the district court on this alternative ground because the State failed to satisfy the deliberate bypass standard.[15]

Petitioner's argument properly concedes that, absent some excuse, he is not entitled to litigate the merits of his *Sandstrom* claim in federal court. Accordingly, we must decide what constitutes a legitimate excuse for a procedural default in a state collateral attack proceeding and whether petitioner or the State bears the burden of proof on the issue.

We conclude that the sufficiency of the excuse is governed by the cause and prejudice standard of *Sykes* [16] and that petition-

---

denied, 474 U.S. 998, 106 S.Ct. 374, 88 L.Ed.2d 367 (1985).

**15.** Petitioner also urges that we should affirm the district court because the Superior Court of Butts County, in dismissing his second state petition as successive, misapplied the Georgia successive petition statute, Ga.Code Ann. § 9–14–51 (1982). Petitioner contends that the Georgia statute requires a "knowing," subjective waiver, while the state court applied a "reasonable," objective waiver standard. Because a federal court should not recognize a procedural default if the state court misapplied its default rule, *see Sinclair v. Wainwright,* 814 F.2d 1516, 1522 (11th Cir.1987), we requested, on oral argument, supplemental briefs to determine whether the state court correctly applied the Georgia successive petition statute. After examining the briefs, the statute, and the Georgia case law, we find that petitioner's construction of the statute is erroneous and that the state court correctly applied the successive petition rule.

The Georgia statute, on its face, declares that a procedural default may be found if a *reasonable* person would have raised the omitted claim in his first petition. The Georgia statute provides:

All grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised by a petitioner in his original or amended petition. Any grounds not so raised are waived unless the Constitution of the United States or of this state otherwise requires or unless any judge to whom the petition is assigned, on considering a subsequent petition, finds grounds for relief asserted therein which *could not reasonably have been raised* in the original or amended petition.

Ga.Code Ann. § 9–14–51 (1982) (previously codified as § 50–127(10)) (emphasis added). This statute has not been amended since 1973.

Despite the clear language of the statute, petitioner argues that the Georgia Supreme Court, in *Smith v. Garner,* 236 Ga. 81, 222 S.E.2d 351 (1976), construed this statute as requiring a "knowing and intelligent waiver." As we read that case, however, the Georgia Supreme Court was referring only to section 50–127(1) (now recodified as amended at Ga.Code Ann. § 9–14–42 (Supp.1982)), which does not apply to *successive* petitions; as the State points out, that section applies only to a petitioner's *first* petition. Thus, *Smith v. Garner* does not support petitioner's argument, especially in light of the number of Georgia Supreme Court decisions which have consistently read section 50–127(10) (now section 9–14–51), the section applicable to successive petitions, as requiring an *objective* standard of waiver. *See, e.g., Brown v. Ricketts,* 233 Ga. 809, 213 S.E.2d 672 (1975); *Fuller v. Ricketts,* 234 Ga. 104, 214 S.E.2d 541 (1975); *Hunter v. Brown,* 236 Ga. 168, 223 S.E.2d 145 (1976) (Hill, J. dissenting); *Dix v. Zant,* 249 Ga. 810, 294 S.E.2d 527 (1982); *Smith v. Zant,* 250 Ga. 645, 301 S.E.2d 32 (1983); *Stevens v. Kemp,* 254 Ga. 228, 327 S.E.2d 185 (1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1237, 89 L.Ed.2d 346 (1986). Accordingly, we believe that the state court correctly applied section 9–14–51 in dismissing petitioner's second petition.

**16.** In *Francis v. Spraggins,* 720 F.2d 1190, 1192 n. 3 (11th Cir.1983), *cert. denied,* 470 U.S. 1059, 105 S.Ct. 1776, 84 L.Ed.2d 835 (1985), a panel of this court questioned, in dicta, whether the *Sykes* standard should be applied to bar federal habeas review of claims that a state habeas corpus court has refused to hear because of procedural default, and suggested that Congress, rather than the federal judiciary, should provide the answer. *Spraggins* was decided prior to the Supreme Court's decision in *Murray v. Carrier,*

er bears the burden of proof. We also conclude that, as a matter of law, petitioner has failed to establish cause for his procedural default in this case. We begin our analysis of petitioner's arguments by examining the objectives of state procedural default rules and the extent to which the Supreme Court has honored those objectives in federal habeas cases.

## II.

## A.

Most states have adopted at least one of three different procedural default rules: the "contemporaneous objection rule," the "abandoned objection rule," or the "successive petition rule." [17] The contemporaneous objection rule concerns errors that occur during the trial of a case; if the defendant wishes to complain of an error on appeal, he must first bring it to the trial court's attention by making a timely objection. The abandoned objection rule bars the defendant from raising on collateral attack a trial court error that he did not raise on direct appeal. The successive petition rule bars the defendant from raising in a second, or successive, collateral attack proceeding an error that he should have presented in his first, or earlier, collateral attack proceeding.[18]

Not every state employs all three procedural default rules, and the scope of a given rule may vary from state to state. Nonetheless, all three rules have a common purpose: to speed the finality of a defendant's conviction and the execution of his sentence, with efficiency and due consider-

ation for the defendant's right to a full and fair hearing. They also have several secondary objectives. Acting together, the rules improve the quality of the criminal prosecution and collateral review proceedings, prevent piecemeal collateral review of claims, and conserve judicial and parajudicial resources.

Prompt finality of conviction and execution of sentence serve important interests of the state, the victim, and the defendant. With respect to the state, prompt finality, like swift arrest and prosecution, deters others from committing crime. Prompt finality also enhances the possibility that the defendant will benefit from any correctional program provided by his sentence. When a conviction is subject to repeated review, especially in collateral proceedings, the state's ability to administer the defendant's correctional program is impaired.

Prompt finality of conviction and execution of sentence benefits the victim by helping him put the trauma of the crime and prosecution behind him. Moreover, if restitution is provided, the victim benefits by receiving compensation at the earliest possible date. Prompt finality similarly benefits the defendant by allowing him to put the trial and conviction behind him. In addition, it enables the defendant to accept that he has been found guilty of the crime, and in non-capital cases, begin the process of rehabilitation and plan his return to the community.

The three procedural default rules achieve their primary and secondary objec-

---

477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). In *Carrier*, the Supreme Court implied that the cause and prejudice test applies to a petitioner's default under a state successive petition rule. *See infra* note 26. Accordingly, in *Morris v. Kemp*, 809 F.2d 1499 (11th Cir.1987), we did not pursue the *Spraggins* dicta and instead chose to give deference to a state's successive petition rule, concluding that on the basis of the facts presented in that case the petitioner lacked cause for his default. *See supra* note 1.

**17.** These procedural default rules are rules of general application. Most states have other procedural default rules of general application,

such as the rule that forbids an appellate court litigant from raising in a petition for rehearing arguments not raised in his main brief on appeal. These rules are not pertinent to our discussion here, and accordingly will not be mentioned further.

**18.** The contemporaneous objection rule bars the state, as well as the defendant, from making an untimely objection during trial. The abandoned objection rule, however, applies only to the defendant because the state has no right to appeal the defendant's acquittal. Likewise, the successive petition rule only acts to bar the petitioner from presenting successive collateral petitions, and does not apply to the state.

tives differently. To demonstrate this, we examine each of the rules in operation.

The contemporaneous objection rule, which bars a defendant from raising on appeal an objection that he could have presented to the trial court, enhances finality in one of two ways. First, by requiring the defendant to present his objection to the trial court, the rule may enable the trial court to prevent reversible error from occurring and to eliminate grounds for an appeal. In this situation, the conviction may become final at the conclusion of the trial. Second, if the trial court cannot prevent reversible error and declares a mistrial, it can convene a retrial promptly, accelerating the finality of the defendant's prosecution. In the absence of a contemporaneous objection rule, the reversible error might not be found until the defendant's conviction is reviewed on appeal or collateral attack, therefore delaying the finality of his prosecution.

The contemporaneous objection rule also serves secondary objectives. By encouraging the defendant to make his objection seasonably, the contemporaneous objection rule increases the potential for an error-free trial and thus a verdict that reflects the truth. The rule produces two salutary effects even when reversible error, necessitating a mistrial, occurs. First, by encouraging the defendant to present his objection to the trial court, the rule may save the defendant from the stigma resulting from an unjust conviction. Absent the rule and a contemporaneous objection, the defendant may have to suffer the stigma throughout an appeal or collateral attack, when his claim of reversible error can be heard and his conviction set aside. Second, the rule improves the potential for a just verdict on retrial, because the court, not having to await the outcome of an appeal or collateral attack proceeding, can commence the trial quickly, while the evidence is still fresh. *See Reed v. Ross,* 468 U.S. 1, 10, 104 S.Ct. 2901, 2907, 82 L.Ed.2d 1

(1984); *Wainwright v. Sykes,* 433 U.S. 72, 88, 97 S.Ct. 2497, 2507, 53 L.Ed.2d 594 (1977). If the retrial does not begin until the defendant's conviction is set aside on appeal or collateral attack, the potential for a just verdict may be diminished because the evidence may have become stale or lost due to the passage of time. Finally, the contemporaneous objection rule conserves judicial and parajudicial resources. Whenever error is corrected by the trial court— through remedial instructions to counsel or the jury or through the declaration of a mistrial—the expenditure of judicial or parajudicial resources in appellate or collateral proceedings convened to address the error is rendered unnecessary.

The abandoned objection rule, which bars the defendant from raising on collateral attack an objection he could have raised on direct appeal, also enhances finality in one of two ways. First, by requiring the defendant to present his objections to the appellate court, the rule makes that court, rather than the collateral attack court, the final arbiter of the merits of his objections. Second, if an objection has merit, necessitating a retrial, the retrial can be convened sooner than if retrial were ordered by the collateral attack court.[19]

The abandoned objection rule serves secondary objectives, too. By encouraging the defendant to present all of his claims of trial error to the appellate court, the rule improves the quality of appellate review because the appellate court can review all of the defendant's claims of error together and assess the combined effect of the errors on his conviction. If the appellate court finds reversible error and orders a retrial, the retrial can be commenced sooner than it could be if ordered by a collateral attack court. Because it facilitates an earlier retrial, the rule increases the potential for a just verdict since the chance that the evidence will be stale is diminished. *See Reed,* 468 U.S. at 10, 104 S.Ct. at 2907. Finally, the abandoned objection rule con-

---

**19.** By encouraging a defendant to raise an objection on appeal, the abandoned objection rule also enhances finality because appellate review of the defendant's conviction may end the prosecution altogether. If the appellate court reverses the defendant's conviction, and the state chooses not to re-try the defendant, the prosecution is ended sooner than if the defendant first presented his claim, and his conviction were set aside, on collateral attack.

serves judicial and parajudicial resources by eliminating the need for collateral proceedings to review objections that could be reviewed on direct appeal.

The successive petition rule, which bars a petitioner from raising in a collateral attack proceeding a claim that he could have raised in an earlier collateral attack proceeding, is as instrumental in enhancing finality as are the contemporaneous objection and abandoned objection rules. By requiring the petitioner to present all his claims in his first collateral attack proceeding,[20] the rule brings the controversy to a close sooner than if the petitioner were given the right to prosecute his claims, in a piecemeal fashion, in successive petitions. In addition, the rule facilitates an earlier retrial in the event that the petition has merit, thus accelerating the finality of the criminal prosecution.

The successive petition rule also promotes secondary objectives. Because the rule encourages a petitioner to raise all of his claims in his first collateral proceeding, the rule improves the quality of collateral review. *See Rose v. Lundy,* 455 U.S. 509, 520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982) (reviewing all claims in one proceeding "provid[es] for a more focused and thorough review").[21] If the court sets aside the petitioner's conviction and orders a new trial, the trial can begin at an earlier date than if the petitioner had deferred his claim to a successive petition. Finally, the successive petition rule saves the state's judicial and parajudicial resources because it limits the petitioner to only one proceeding in which to present his claims of error.

## B.

The primary and secondary objectives of the three procedural default rules are achieved only to the extent that the state courts, and the federal habeas courts, honor them. The Supreme Court has recognized this fact, and for years has debated whether, and to what extent, the need to honor state procedural default rules should bar state prisoners from access to the Great Writ.

In *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), the Court attempted to strike a balance between the need to honor state procedural rules and the need to preserve state prisoner access to federal habeas corpus relief. The petitioner, Noia, was convicted of murder by a New York state court and sentenced to prison. He did not appeal his conviction. Fourteen years later, he petitioned the state trial court for a writ of coram nobis, alleging that his conviction was unconstitutional because it was based on a coerced confession. The trial court granted the writ, but the New York Court of Appeals disagreed, ruling that Noia's claim, being cognizable on direct appeal, could not be entertained on coram nobis review.[22]

Noia thereafter sought a writ of habeas corpus in federal district court, raising the same claim. The state, responding, argued that the court could not entertain Noia's petition because Noia, by not appealing his conviction, had prevented the New York appellate courts from passing on his claim. The district court adopted the state's argument and denied the writ. *United States ex rel. Noia v. Fay,* 183 F.Supp. 222 (S.D.

---

**20.** Most state successive petition rules bar a successive petition only if it contains a claim that *reasonably* could have been raised in an earlier petition. *See, e.g.,* Ga.Code Ann. § 9–14–51 (1982). Therefore, a successive petition rule is not an *absolute* bar to subsequent petitions.

**21.** When all of a petitioner's claims are presented in one collateral proceeding, the court can review the claims more effectively. If the petitioner alleges a number of related claims of error, the collateral attack court, having the benefit of a broader base of evidence than it would have were the petitioner's claims present-

ed in a piecemeal fashion, can judge the synergistic or cumulative effect of the errors on the petitioner's conviction.

**22.** The Kings County Court granted the writ of coram nobis, *People v. Noia,* 3 Misc.2d 447, 158 N.Y.S.2d 683 (1956), but the Appellate Division of the New York Supreme Court reversed, reinstating Noia's conviction. *People v. Noia,* 4 A.D. 2d 698, 163 N.Y.S.2d 796 (1957). The New York Court of Appeals affirmed. *People v. Caminito,* 3 N.Y.2d 596, 170 N.Y.S.2d 799, 148 N.E.2d 139, *cert. denied,* 357 U.S. 905, 78 S.Ct. 1149, 2 L.Ed. 2d 1156 (1958).

N.Y.1960). The Second Circuit reversed. *United States ex rel. Noia v. Fay,* 300 F.2d 345 (2d Cir.1962). The court of appeals "questioned whether § 2254 barred relief ... where the applicant had failed to exhaust state remedies no longer available to him at the time the habeas proceeding was commenced (here a direct appeal from the conviction), but held that in any event exceptional circumstances were present which excused compliance with [section 2254]." *Fay v. Noia,* 372 U.S. at 397, 83 S.Ct. at 826.

The Supreme Court agreed, holding that Noia's failure to appeal his conviction had not divested the district court of its *power* to grant the writ. The Court went on to state, however, that a federal habeas court has the *discretion* not to review the claim of "an applicant who has *deliberately bypassed* the orderly procedure of the state courts and in doing so has forfeited his state court remedies." *Id.* at 438, 83 S.Ct. at 849 (emphasis added).

In *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Supreme Court addressed a different kind of procedural default rule and employed a different test to determine whether the petitioner's default should be excused. In that case, the petitioner, Sykes, failed to comply with Florida's contemporaneous objection rule and thereby prevented the state trial and appellate courts from passing on the validity of his confession. Being unable to obtain relief in state court, Sykes sought a writ of habeas corpus in federal district court. The court granted the writ, rejecting the state's argument that Sykes' procedural default barred federal review of his claim. The Fifth Circuit affirmed, holding that because the state had failed to prove that Sykes had committed a "deliberate bypass" as required by *Fay,* the district court had to entertain his claim. *Wainwright v. Sykes,* 528 F.2d 522 (5th Cir. 1976).

Relying on two earlier cases, *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), and *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), the Supreme Court reversed, ruling that unless Sykes could show cause for his default and actual prejudice flowing from the improper use of his confession, he could not obtain federal habeas review of his defaulted claim. *Sykes,* 433 U.S. at 87, 97 S.Ct. at 2506. Noting that the contemporaneous objection rule "is by no means peculiar to Florida, and deserves greater respect than *Fay* gives it," the Court rejected the deliberate bypass standard of *Fay* and adopted the cause and prejudice test to give effect to the policies underlying Florida's contemporaneous objection rule. *Id.* at 88, 97 S.Ct. at 2507. Since *Sykes,* the Court has adhered to its position that the cause and prejudice test governs the reviewability of claims barred by a state's contemporaneous objection rule, *see Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982),[23] and has held that the test also governs the reviewability of claims barred by a state's abandoned objection rule. *See Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984); *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).[24]

---

**23.** In *Engle,* the Court reaffirmed the application of the cause and prejudice test to claims that petitioners failed seasonably to raise at trial, as required by the state's contemporaneous objection rule, and thus did not preserve for appellate review. The petitioners in *Engle* argued that they had good cause for their procedural default because their constitutional claims were "novel," and thus unknown to them, at the time of their trial. The Court, without deciding "whether the novelty of a constitutional claim ever establishes cause for a failure to object," *Engle,* 456 U.S. at 131, 102 S.Ct. at 1573, found that the petitioners' claims were not novel because, at the time of their default, the petition-

ers did not "lack[ ] the tools to construct their constitutional claims." *Id.* at 133, 102 S.Ct. at 1574. The Court therefore held that the petitioners failed to show cause for their procedural default. *Id.*

**24.** In *Reed,* the Court held that the cause and prejudice test is not limited to procedural defaults at trial, but applies as well to a petitioner's violation of a state's abandoned objection rule. *Reed,* 468 U.S. at 8–11, 104 S.Ct. at 2906–08. The Court also answered the question it left open in *Engle,* holding that "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has

When the Supreme Court adopted the cause and prejudice test in *Sykes*, it departed from *Fay*'s deliberate bypass test in two respects. First, the Court changed the standard of review. Under *Fay*'s deliberate bypass test, a federal habeas court examines the subjective knowledge of the petitioner: unless the petitioner himself made a knowing and intelligent waiver of his claim in state court, the federal habeas court will hear the defaulted claim. *Sykes* abandoned this approach and applied an objective test based on the reasonable knowledge of counsel: if a reasonably competent attorney would have raised the defaulted claim in state court, the claim is barred even though the petitioner did not make a knowing, subjective waiver of the claim.

Second, the Court shifted the burden of proof from the state to the petitioner. *Fay* presumes that a petitioner does not waive his claim when he fails to raise it as required by the state's procedural rules and, moreover, places on the state the burden of proving that a waiver has occurred. In contrast, *Sykes* places the burden of proof on the petitioner to show that his attorney had good cause for failing to raise the claim in state court.

The Court, in *Sykes* and *Reed*, abandoned *Fay*'s deliberate bypass test because the test fails to honor the objectives of the contemporaneous objection and abandoned objection rules. It is impossible in most cases for the state to meet the deliberate bypass test, because virtually all defaults are caused by counsel strategy or neglect. Defaults rarely are caused by the petitioner's informed decision—or deliberate bypass—because few petitioners are schooled in the law and have the ability to recognize a claim and decide whether to assert it. In sum, under *Fay*'s test, the federal courts are likely to dishonor state procedural default rules, except in the extraordinary case. Only where counsel thoroughly and seasonably informed the petitioner of his constitutional objection and the consequences of waiving it, and the petitioner voluntarily chose not to assert the objection, would the state's procedural default rule be honored.

*Sykes* and *Reed*, however, did not render *Fay* a dead letter; *Fay* has never been expressly overruled. We have suggested that *Fay*'s deliberate bypass test still applies to claims involving fundamental decisions that should not, or realistically cannot, be delegated to counsel, such as the defendant's decision to plead guilty, waive his right to a jury trial, or take an appeal. *See Blake v. Kemp*, 758 F.2d 523, 546 (11th Cir.) (Tjoflat, J., dissenting), *cert. denied*, 474 U.S. 998, 106 S.Ct. 374, 88 L.Ed.2d 367 (1985). This interpretation of the continued yet limited efficacy of *Fay* makes eminent sense, given that *Sykes*' objective standard presupposes the general competency of counsel—a presumption that has no relevance when fundamental decisions, that are not counsel's to make, are at stake. This view of *Fay*'s continued applicability has been supported in recent decisions of the Supreme Court. *See Reed*, 468 U.S. at 11, 104 S.Ct. at 2908 (cause and prejudice applies "[w]here ... a defendant has failed to abide by a State's procedural rule *requiring the exercise of legal expertise and judgment*") (emphasis added); *see also Carrier*, 477 U.S. at ——, 106 S.Ct. at 2648 (refusing to decide whether the cause and prejudice test can be extended to the fundamental decision whether to take an appeal *at all*).

### C.

■ Although the Supreme Court has held that the cause and prejudice test applies to a petitioner's violation of state contemporaneous objection and abandoned objection rules, it has never determined whether that test, as opposed to the delib-

---

cause for his failure to raise the claim in accordance with applicable state procedures." *Id.* at 16, 104 S.Ct. at 2910.

In *Carrier*, 477 U.S. at ——, 106 S.Ct. at 2646–48, the Court reiterated that the cause and prejudice test should be applied to procedural defaults in the state appellate courts. Finally, in *Smith*, 477 U.S. at ——, 106 S.Ct. at 2667–68, the Court, applying *Reed*, held that the novelty of a claim can support a finding of cause for appellate, as well as trial, default.

erate bypass test, applies to a claim barred by a state's successive petition rule.[25] We conclude that the Supreme Court would extend the rationale of *Sykes* and *Reed* to a claim that a state collateral attack court has refused to hear because the petitioner failed to raise it in an earlier collateral attack proceeding.

We reach this conclusion for two reasons. First, the objectives of the successive petition rule are essentially the same as the objectives of the contemporaneous objection and abandoned objection rules. All three rules are designed to render the defendant's conviction final with respect to the defaulted claim. The three rules differ only in the *timing* of their application. That the successive petition rule applies in the collateral attack context provides no justification for giving the rule the slight deference afforded by the deliberate bypass test, a deference the Supreme Court found inadequate with respect to the rules that apply in the trial and appellate contexts. The reason for the Court's application of the cause and prejudice test to defaults under state contemporaneous objection or abandoned objection rules—to honor the important state objectives served by these rules—applies with equal force to defaults under state successive petition rules.[26]

Second, no overriding federal interest suggests that the successive petition rule be treated with less deference than the other two procedural default rules. To the contrary, federal policy indicates that federal habeas courts should enforce state successive petition rules by applying the more deferential cause and prejudice test.

The Supreme Court and Congress have long recognized the utility, if not the necessity, of state collateral procedures for reviewing claims not cognizable on direct appeal from a conviction. In the absence of a collateral procedure, a state prisoner has no means of challenging, in state court, the validity of his conviction with a claim that does not become apparent until after he has been convicted and sentenced. To encourage the states to provide a collateral procedure adequate to entertain these claims, the Supreme Court and Congress have fashioned two limitations on federal habeas corpus review of state convictions. These two limitations, embodied in the federal habeas statute, 28 U.S.C. § 2254 (1982), give deference to the findings of fact of state collateral proceedings, but only if the collateral procedure is adequate.

The first such limitation is the exhaustion of state remedies doctrine, formulated in *Ex parte Royall*, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886). In *Royall*, the Court stated that, as a matter of comity, federal courts should not hear a state prisoner's habeas claim until the state courts have had an opportunity to litigate the claim. The exhaustion of state remedies doctrine led the states to fashion compre-

---

**25.** In *Murch v. Mottram*, 409 U.S. 41, 93 S.Ct. 71, 34 L.Ed.2d 194 (1972), the Supreme Court upheld the district court's refusal to review a claim that the Maine courts declined to hear because the claim had been presented in a successive petition in violation of the Maine successive petition statute, Me.Rev.Stat.Ann. tit. 14, § 5507 (1964), a statute virtually identical to the Georgia successive petition statute at bar. The district court, applying *Fay*, refused to entertain the claim because the petitioner had deliberately bypassed his state remedy. The *Murch* decision, however, preceded *Sykes* by four years. *Murch*, therefore, does not stand for the proposition that *Fay*, as opposed to *Sykes*, applies to the default presented in this case.

**26.** Our conclusion that the cause and prejudice standard applies to petitioners' defaults under a state successive petition rule is supported by recent dicta of the Supreme Court:

A State's procedural rules serve vital purposes at trial, on appeal, *and on state collateral attack....*

We ... believe that *the standard for cause should not vary depending on the timing of a procedural default or on the strength of an uncertain and difficult assessment of the relative magnitude of the benefits attributable to the state procedural rules that attach at each successive stage of the judicial process.* "Each State's complement of procedural rules ... channel[s], to the extent possible, the resolution of various types of questions to the stage of the judicial process at which they can be resolved most fairly and efficiently."

*Carrier*, 477 U.S. at ——, 106 S.Ct. at 2647 (quoting *Reed*, 468 U.S. at 10, 104 S.Ct. at 2907) (emphasis added).

hensive collateral remedies and freed their criminal justice systems from unnecessary federal intrusion. In 1948, Congress codified the exhaustion doctrine when it promulgated section 2254, *see Rose v. Lundy*, 455 U.S. 509, 516, 102 S.Ct. 1198, 1202, 71 L.Ed.2d 379 (1982), further encouraging the states to provide collateral remedies that give state prisoners a full and fair opportunity to challenge their convictions in state court.

The second limitation on federal habeas review gave the states an added incentive to provide collateral review procedures. This limitation is the presumption of correctness a federal court must afford a state court's findings of fact. As noted, when a petition for collateral review is filed in state court, an evidentiary hearing is often necessary to resolve the factual disputes underlying the petitioner's claims. If the collateral proceeding constitutes a "full and fair hearing," the state court's findings of fact are given a presumption of correctness in subsequent habeas proceedings in federal court. *See* 28 U.S.C. § 2254(d) (1982). Under this scheme, federal courts ordinarily adopt the state court's findings of fact, and engage in de novo review only of questions of federal constitutional law. By encouraging the states to determine the facts underlying a petitioner's claims, the presumption of correctness conserves federal judicial resources by eliminating the need for federal evidentiary hearings.

The cause and prejudice test is more compatible with the scheme of section 2254 than is the deliberate bypass test. In fact, giving a state prisoner an evidentiary hearing in federal court on a claim the state collateral attack court has refused to hear because it was in a successive petition, unless the state proves that the prisoner deliberately bypassed his state remedy, would frustrate that scheme. First, as we have pointed out, the state could rarely demonstrate a deliberate bypass; consequently, the federal courts almost always would be forced to hold evidentiary hearings on defaulted claims. Moreover, because the deliberate bypass test would seldom operate to bar a claim, collateral attack counsel might be more likely to overlook a claim in preparing his client's first state petition, thus increasing the number of claims to be resolved in the first instance by the federal courts.

Second, the application of the deliberate bypass test could lead to forum shopping. Because the deliberate bypass test focuses on the actual knowledge of the petitioner, rather than the constructive knowledge of his attorney, counsel could ensure that the test would present no bar to a claim simply by not explaining the claim to his client. The state could not meet the deliberate bypass standard if the petitioner was ignorant of his claim at the time of the default. Hence, counsel could forum shop between state and federal court, preserving some claims for presentation only to the federal court. Such forum shopping would be attractive if, for example, counsel believed that the federal, rather than the state, factfinder would be more sympathetic to certain claims.[27]

This practice of forum shopping would, of course, undermine Congress' intent, embodied in the exhaustion doctrine, that state courts have the first opportunity to review a claim. It would also frustrate Congress' desire to prevent the wasteful dissipation of scarce federal judicial resources. Finally, forum shopping would discourage the states from providing meaningful collateral review of their own because state prisoners could effectively evade state collateral procedures and proceed directly to federal court, reducing state collateral review to a mere formality.

The cause and prejudice test, however, avoids these problems. Defaults during

---

27. If a petitioner's counsel wished to litigate the bulk of his claims before a federal, rather than a state, factfinder, counsel could present one claim to the state collateral attack court and, after the state collateral proceedings had concluded, present the balance to the federal district court. Because the state could not prove that the petitioner had knowingly waived these claims—especially if counsel kept the petitioner ignorant of them—*Fay's* deliberate bypass test would pose no deterrent to counsel's forum shopping, and the federal court would have to resolve the factual disputes underlying the petitioner's claims.

state collateral proceedings that arose out of "the exercise of legal expertise and judgment" of counsel, *see Reed,* 468 U.S. at 11, 104 S.Ct. at 2908, would be tested under a cause standard, which focuses on the knowledge of a reasonably competent attorney. Counsel could not forum shop between state and federal courts merely by keeping the petitioner ignorant of his claims. Therefore, counsel could not undermine the exhaustion doctrine or the presumption of correctness.

We believe that requiring a petitioner to raise all of his claims in his first state proceeding in accordance with a state's successive petition rule is not an unreasonable condition to place on federal habeas petitioners. Federal courts already require a federal habeas petitioner to raise all of his claims in his first federal petition. If a petitioner files a successive petition, he must demonstrate that his petition does not constitute an abuse of the writ, *see* Rule 9(b), Fed.R. Governing Sec. 2254 Cases, 28 U.S.C. foll. § 2254 (1982); otherwise, his petition will be dismissed.

Although the application of the cause and prejudice test will bar some petitioners from litigating meritorious claims in federal court, we believe that it will provide an adequate guarantee of protection. If the petitioner fails to demonstrate sufficient cause or prejudice, a federal court will not be foreclosed from granting relief. As the Supreme Court has recently stated,

> " '[i]n appropriate cases' the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.' " Accordingly, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."

*Smith v. Murray,* 477 U.S. 527, ——, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986) (quoting *Carrier,* 477 U.S. at ——, ——, ——, 106 S.Ct. at 2639, 2650, 2654).

We hold that when a petitioner presents a claim that the state collateral attack court refused to hear because it was contained in a successive petition, the petitioner must demonstrate cause for his failure to raise the claim in his earlier collateral proceeding and actual prejudice. Our holding does not embrace the default of a claim involving a fundamental decision that cannot be waived by counsel; in this situation, we believe that *Fay*'s deliberate bypass test still controls.

In so holding, we join the growing number of our sister circuits that have addressed this question and held the cause and prejudice test applicable to procedural defaults during state collateral attack proceedings. *See, e.g., Hughes v. Idaho State Bd. of Corrections,* 800 F.2d 905, 908 (9th Cir.1986) (*Sykes* applied to petitioner's failure to appeal state court's denial of habeas relief); *Gray v. Greer,* 800 F.2d 644, 647 (7th Cir.1985) (*Sykes* applied to petitioner's violation of Illinois successive petition rule); *Ewing v. McMackin,* 799 F.2d 1143, 1150–51 (6th Cir.1986) (*Sykes* applied to petitioner's failure to appeal denial of state habeas relief); *United States ex rel. Devine v. DeRobertis,* 754 F.2d 764, 768 (7th Cir. 1985) (*Sykes* applied to petitioner's violation of Illinois successive petition rule); *Williams v. Duckworth,* 724 F.2d 1439, 1443 (7th Cir.) (*Sykes* applied to petitioner's violation of Indiana successive petition rule and failure to appeal denial of first petition), *cert. denied,* 469 U.S. 841, 105 S.Ct. 143, 83 L.Ed.2d 82 (1984); *Matias v. Oshiro,* 683 F.2d 318, 321 & n. 3 (9th Cir.1982) (*Sykes* applied to petitioner's violation of Hawaii successive petition statute); *see also Smith v. Baker,* 624 F.Supp. 1075, 1077–78 (E.D.Va.1985) (*Sykes* applied to petitioner's violation of Virginia successive petition statute); *Briley v. Bass,* 584 F.Supp. 807, 844–45 (E.D.Va.) (absent compelling circumstances, *Sykes* should be applied to violation of Virginia successive petition statute), *aff'd,* 742 F.2d 155 (4th Cir.), *cert. denied,* 469 U.S. 893, 105 S.Ct. 270, 83 L.Ed.2d 206 (1984).

Having determined the standard to be applied to a claim which the state collateral attack courts refused to hear because it was presented in a successive petition, we

now address the question whether the district court correctly applied that standard. The district court found that petitioner established cause for his default and resulting prejudice. We reverse the judgment of the district court because we find, as a matter of law, that petitioner failed to demonstrate sufficient cause.

### III.

■ Petitioner, in his memorandum brief to the district court, raised two arguments to support a finding of cause. First, he asserted that his lawyer simply did not realize that the trial court's jury instruction violated *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); consequently, his lawyer's error should not preclude him from litigating his claim. Alternatively, he argued that the court's instruction did not violate *Sandstrom;* rather, it transgressed the principles of *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), which were not yet established and, moreover, were novel. His attorney thus had good cause for not challenging the instruction in his first state habeas proceeding. The district court, in granting relief, relied on the latter argument, concluding that petitioner's claim was in fact novel.

Petitioner's first assertion, that he should not be charged with a default because his counsel was not aware of the claim, has been rejected by the Supreme Court as a basis for cause. In *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), the petitioner argued that he should be excused from his procedural default because of his appellate counsel's inadvertence. The Supreme Court flatly rejected this reasoning:

> The real thrust of respondent's arguments appears to be that on appeal it is inappropriate to hold defendants to the errors of their attorneys. Were we to accept that proposition, defaults on appeal would presumably be governed by a rule equivalent to *Fay v. Noia*'s "deliberate by-pass" standard, under which only personal waiver by the defendant would require enforcement of a proce-

dural default. We express no opinion as to whether counsel's decision not to take an appeal at all might require treatment under such a standard, see *Wainwright v. Sykes,* 433 U.S., at 88, n. 12, 97 S.Ct., at 2507, n. 12, but, for the reasons already given, we hold that counsel's failure to raise a *particular* claim or claims on appeal is to be scrutinized under the cause and prejudice standard when that failure is treated as a procedural default by the state courts. Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial. To the contrary, cause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim.

*Id.* at —, 106 S.Ct. at 2648. We see no reason to distinguish between inadvertence by state appellate counsel and inadvertence by state habeas counsel. Accordingly, petitioner's first argument fails.

As noted, petitioner's second argument, that his claim was novel at the time of his first state habeas petition, provided the basis for the district court's grant of habeas relief. We are not persuaded, however, that the claim was novel. In *Tucker v. Kemp,* 819 F.2d 978 (11th Cir.1987) (per curiam), the petitioner made the same argument in an attempt to justify his successive federal petition which, the state contended, had been filed in violation of Rule 9(b), Fed.R. Governing Sec. 2254 Cases. We concluded:

> The district court held that *Franklin* did not constitute "new law" and that petitioner's *Franklin* claim should have been raised in his first petition. We agree. The Supreme Court's decision in *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), which was decided on June 18, 1979, over two and a half years before petitioner filed his first habeas petition in the district court, should have informed counsel that the challenged mandatory rebuttable presumption was questionable. *Franklin* is

simply an extension of *Sandstrom*'s holding.

*Id.* at 980. *See also Franklin,* 471 U.S. at 317–18 n. 5, 105 S.Ct. at 1973 n. 5 (1985) (*Franklin* decision does not extend prior law). The petitioner here first sought state habeas relief in January 1980, seven months after the Supreme Court's decision in *Sandstrom.* He therefore had constructive notice that a Supreme Court decision had struck down a jury instruction on criminal intent that was similar to the instruction in his case and should have included this claim as a ground for relief.[28]

Moreover, we note that petitioner seemingly had no difficulty in raising the claim as a *Sandstrom* violation in his first federal petition, filed in the district court in June 1981—nearly two and a half years *before* our decision in *Franklin v. Francis,* 720 F.2d 1206 (11th Cir.1983) and four years *before* the Supreme Court's affirmance. Given that he presented his claim before *Franklin,* we believe it is simply absurd for him to now argue that "[u]ntil *Franklin* ... there was no reasonable basis for ... rais[ing] his claim." We do not deny that *Franklin* provides more support for petitioner's claim than does *Sandstrom. Franklin,* unlike *Sandstrom,* applies specifically to instructions creating rebuttable presumptions of intent. This distinction, however, is insufficient to establish cause under *Sykes.* The proper inquiry is "whether at the time of the default the claim was 'available' at all." *Smith,* 477 U.S. at ——, 106 S.Ct. at 2667. As shown by petitioner's own action in raising this claim in his first federal petition in 1981, the claim was "available" well before *Franklin* was decided.

Petitioner has failed to establish that he lacked the "tools to construct [his] constitutional claim," *Engle v. Isaac,* 456 U.S. 107, 133, 102 S.Ct. 1558, 1574, 71 L.Ed.2d 783 (1982); *see also Smith,* 477 U.S. at ——, 106 S.Ct. at 2667–68; *Reed,* 468 U.S. at 17–20, 104 S.Ct. at 2911– 12; thus, his defaulted claim is not novel. The only other ground asserted by petitioner—that he was unaware of the claim—is likewise insufficient to establish cause for his procedural default. Therefore, the district court erred in concluding that petitioner had not waived his *Sandstrom* claim.[29]

This is not the end of the inquiry, however. Although petitioner has failed to show cause for his default, habeas relief may still be granted if necessary to "correct[ ] a fundamentally unjust incarceration." *Smith,* 477 U.S. at ——, 106 S.Ct. at 2668. If the trial judge's instructions "probably resulted in the conviction of one who is actually innocent," *id.,* the writ should issue. Nothing has been presented to us that would indicate that petitioner is "actually innocent" of the crimes for which he stands convicted. Accordingly, petitioner is not entitled to a writ of habeas corpus on the basis of the challenged jury instruction.

## IV.

The judgment of the district court is reversed. The case is remanded for the district court's consideration of petitioner's remaining claims.

REVERSED and REMANDED.

---

**28.** In *Franklin,* the Supreme Court noted that the basis for the decision in that case preceded *Sandstrom* and could be traced back to the Court's earlier decisions in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). *See Franklin,* 471 U.S. at 317–18 n. 5, 105 S.Ct. at 1973 n. 5.

**29.** In light of our holding that petitioner failed to establish cause for his procedural default in not raising his claim in his first state habeas petition, we do not reach the question of whether the petitioner was prejudiced. *See Sykes,* 433 U.S. at 90–91, 97 S.Ct. at 2508–09; *cf. Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 3106–09, 92 L.Ed.2d 460 (1986); *Bright v. Williams,* 817 F.2d 1562, 1565 (11th Cir.1987).